IDAHO FARM BUREAU FEDERATION, a non-profit corporation, and American Farm Bureau Federation, a non-profit corporation, Plaintiffs,

v.

Bruce BABBITT, Secretary of Interior; John F. Turner, Director, U.S. Fish & Wildlife Service; Robert N. Smith, as Acting Director of U.S. Fish & Wildlife Service; Charles Lobdell, Director, Boise Field Office, U.S. Fish & Wildlife Service; U.S. Fish & Wildlife Service; and United States of America, Defendants,

and

Idaho Conservation League, Idaho Rivers United, and The Committee for Idaho's High Desert, Intervenors.

No. 93–0267–S–LMB.

United States District Court, D. Idaho.

Aug. 31, 1995.

Gary D. Babbitt, Brad P. Miller, Boise, ID, for Plaintiff.

John L. Marshall, U.S. Department of Justice, Environmental & Natural Resources Division, Washington, DC, Laird J. Lucas, Boise, ID, D. Marc Haws, Asst. United States Attorney, Boise, ID, for Defendant.

## MEMORANDUM DECISION AND ORDER

BOYLE, United States Magistrate Judge.

Currently pending before the Court are Plaintiffs' Motion for Summary Judgment (Docket No. 46); the Federal Defendants' Cross–Motion for Summary Judgment (Docket No. 53); the Federal Defendants' Motion to Strike Plaintiffs' Affidavits Filed in Support of Motion for Summary Judgment (Docket No. 71); Plaintiff Farm Bureau's Motion to Strike Frest and Hershler Affidavits (Docket No. 80); and the Federal Defendants' Motion to Enlarge Time to Respond to Plaintiffs' Supplemental Briefing (Docket No. 115).

The Court held a hearing on the cross-motions for summary judgment after which Plaintiffs were allowed to submit supplemental affidavits on the limited issue of standing, and both parties were allowed to file post-argument briefs. Those materials have since been filed, and the matter has been fully argued, briefed and submitted to the Court for its consideration.

Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.

## BACKGROUND

On July 14, 1993, Plaintiffs Idaho Farm Bureau ("IFB") and American Farm Bureau Federation ("AFBF"), non-profit organizations representing the agricultural interests of farmers and ranchers across Idaho and the United States, filed this action seeking declaratory and injunctive relief against Bruce Babbitt, Secretary of the Interior, and other federal agencies and officers (hereinafter referred to as the "Federal Defendants"). On October 7, 1994, Plaintiffs amended their complaint, alleging violations of the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, et seq., the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, et seq., and the Federal Advisory Committee Act ("FACA"), 5 U.S.C.App. 2, with respect to final listing by the Fish and Wildlife Service ("FWS") of four species of Snake River mollusks as endangered and one as threatened.

On January 1, 1994, the Idaho Conservation League, Idaho Rivers United and the Committee for Idaho's High Desert ("Intervenors"), non-profit environmental organizations, moved to intervene, which motion was granted by Order of the District Court on February 22, 1994 (Docket No. 20). The action is now properly before this Court for final determination.

As a preliminary observation, and as the District Court held on two prior occasions in this instant action, the proceeding is an administrative review of the actions and decisions of the FWS and is limited to the record before the agency, except on the legal issue of standing. Consequently, the parties seek to resolve this action as a matter of law on their respective cross-motions for summary judgment.

The facts pertinent to these proceedings are noteworthy and will be briefly summarized. On December 18, 1990, the FWS published a proposed rule under the ESA to determine the status of five species of mol-

lusks found only in isolated segments of the Snake River and adjacent springs as endangered or threatened under the ESA, 16 U.S.C. §§ 1531–44. The five mollusks in question are the Idaho springsnail, the Utah valvata snail, the Snake River Physa snail, the Branbury Springs lanx, and the Bliss Rapids snail. This proposed listing was based on a number of scientific studies of the mollusks in question and their habitat, and concluded that the habitat was restricted to small portions of their historic range.

Public hearings on the proposal were held from late 1990 to the spring of 1991, during which the FWS received extensive public comment, including comments from some of the parties to this action. The comment period was opened a final time on October 31, 1991. Because there was extensive public interest relating to the issue of the listing of the mollusks, the FWS decided to have Dr. C. Michael Falter, a professor at the University of Idaho, review, summarize, and analyze the available information on the mollusks. To aid in his review, Dr. Falter invited a panel of technical personnel, as requested by the FWS, to meet on October 21–22, 1991 to help him with the project.

Dr. Falter's technical review panel was comprised of both disinterested, neutral scientists and also those who were considered "opponents" and "proponents" of the proposed listing. For example, Dr. Richard Konopacky attended the panel as a representative of Plaintiffs, while Drs. Terrence Frest and Peter Bowler attended as proponents of the listing. Other scientists were also invited to attend and participate with the panel. The panel was convened on October 21–22, 1991 as scheduled, but not all invitees were in attendance. After leading the group through a discussion of the relevant scientific information regarding the mollusks, Dr. Falter prepared a summary of the proceedings and, on November 22, 1991, sent a draft to all of the invited participants.

Dr. Falter solicited and received comments on the draft summary from those who attended the panel meetings, as well as those who did not attend. Although the technical "comment period" had passed, Dr. Falter incorporated many of these comments into another draft summary and, on February 14, 1992, circulated the revised draft to all invitees for further comment. Again, the experts submitted additional comments, many of which Dr. Falter included in his final report submitted to the FWS on or about March 26, 1992.

The FWS published its final decision on December 14, 1992 to list four mollusks as endangered, and one as threatened. In their Amended Complaint, Plaintiffs allege that this listing is arbitrary, capricious, and an abuse of discretion, that it is not based on the best available scientific data as required by the ESA, and that the listing violates various procedural requirements set forth in the ESA, the APA, and the FACA. In essence, Plaintiffs seek declaratory relief and an injunction "de-listing" the mollusks as endangered and threatened.

The Court has carefully reviewed the various memoranda filed by the parties, the cases cited therein, the arguments of counsel at the hearing, the several affidavits on the issue of standing, and the extensive fourteen volume administrative record on file. The issues are now ripe for decision.

## II.

## CROSS–MOTIONS FOR SUMMARY JUDGMENT

In their motion for summary judgment, Plaintiffs assert that they are entitled to summary judgment on the grounds that the FWS violated the FACA by improperly creating and administering the scientific review panel, and particularly by accepting comments from third parties outside the comment period; that the Federal Defendants did not timely list the five snails within the one year time limit after publishing notice of the proposed listing;[1] that the Federal Defendants failed to provide proper notice of

---

**1.** In a related case, *Idaho Farm Bureau v. Babbitt,* 58 F.3d 1392 (9th Cir.Idaho 1995), the Ninth Circuit recently rejected this identical claim raised by Plaintiff IFB in that action. *Id.* at 1400–02. Consequently, in this instant action,

Defendants are entitled to summary judgment on this issue for the reasons stated by the Ninth Circuit in *Idaho Farm Bureau* in addition to the reasons set forth hereinbelow.

the proposed listing to the affected counties; and that the listing is arbitrary and capricious because it violated the ESA's "best available scientific data" mandate.

In its cross-motion for summary judgment, the Federal Defendants argue that Plaintiffs lack standing to challenge the listing under the ESA and APA, that laches bars Plaintiffs' FACA claim, and that injunctive relief invalidating the listing under the FACA is inappropriate.

Because the Federal Defendants' motion challenging Plaintiffs' standing to bring their ESA and APA claims goes directly to the Court's subject matter jurisdiction, and may be dispositive of the entire proceeding, the Court will first determine whether Plaintiffs have standing to bring this action.

### A. *Summary Judgment Standard*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The United States Supreme Court has made it clear that under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element which is essential to his case and upon which he will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the nonmoving party fails to make such a showing on any essential element of his case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.[2]

Under Rule 56 it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial," *Hahn v. Sargent*, 523 F.2d 461, 463 (1st Cir.1975) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)), *cert. denied* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976) or when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986). The Ninth Circuit cases are in accord. *See British Motor Car Distributors, Ltd. v. San Francisco Automotive Industries Welfare Fund*, 882 F.2d 371 (9th Cir.1989).

In ruling on summary judgment motions, the court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626 (9th Cir.1987). Moreover, all inferences must be drawn in the light most favorable to the nonmoving party. *Id.* at 631. As the Ninth Circuit Court of Appeals has stated, "[p]ut another way, if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *Id.*

In order to withstand a motion for summary judgment, the Ninth Circuit has held that a nonmoving party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come

---

2. *See also* Rule 56(e), which provides in part: When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule,

must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

U.S.S.C. Court Rules, Rules of Civil Procedure, Rule 56(e) (Law. Co-op.1987 & Supp.1991).

forward with more persuasive evidence than would otherwise be necessary when the factual context makes the nonmoving party's claim implausible.

*British Motor Car Distributors,* 882 F.2d at 374 (citation omitted). Moreover, the Ninth Circuit has held that where the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must "produce 'specific facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983) (citing *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980)).

The Ninth Circuit Court of Appeals has acknowledged that in recent years the Supreme Court, "by clarifying what the nonmoving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988). As the Ninth Circuit has expressly stated: "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id.*

In addressing the application of the "Summary Judgment Test," the Ninth Circuit has specifically explained that:

> A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the *substantive law* governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Electrical Serv., Inc.,* 809 F.2d at 630 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)) (emphasis added).

## B. Standing to Sue Under the ESA and APA

The controlling Supreme Court case addressing the constitutional requirement of standing is *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In *Defenders,* the Supreme Court was confronted with the question whether Defenders of Wildlife, an environmental organization, had standing to sue the Secretary of the Interior under Section 7 of the ESA to force him to reinstate a rule that requires the application of the ESA to activities of the United States government in foreign countries.

Reviewing its earlier decisions on the issue of standing, the Supreme Court clearly stated that in order to meet the "cases" and "controversies" jurisdictional requirement of Article III of the United States Constitution, the party invoking federal jurisdiction bears the burden of establishing, at a minimum, the following elements: (1) the plaintiff must have personally suffered a concrete "injury in fact" to a legally protected interest, or that such an injury is imminent or "certainly impending"; (2) the injury must be fairly traceable to the challenged action; and (3) it must be likely, as opposed to merely speculative, that a favorable decision will redress the injury. *Defenders,* at 559–61, 112 S.Ct. at 2136. *See also Pacific Northwest Generating Cooperative v. Brown,* 38 F.3d 1058, 1062 (9th Cir.1994); *Yesler Terrace Community Council v. Cisneros,* 37 F.3d 442, 445 (9th Cir.1994).

A plaintiff must also establish a fourth element where it challenges agency action under the APA—"parties seeking review under [the APA] must ... establish that the injury he or she complains of 'falls within the "zone of interests" sought to be protected by the statutory provision whose violation forms the basis ... [of the] complaint.'" *Salmon River Concerned Citizens v. Robertson,* 32 F.3d 1346, 1354 (9th Cir. 1994) (quoting *Lujan v. National Wildlife Federation,* 497 U.S. 871, 883, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990)). *See also Sierra Club v. Morton,* 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972); *Douglas County v. Babbitt,* 48 F.3d 1495 (9th Cir. 1995); *Yesler,* 37 F.3d at 445 (citing *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970)). Although this "zone of

interests" requirement "is not meant to be especially demanding," *Soler v. Scott,* 942 F.2d 597, 605 (9th Cir.1991), *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 454, 121 L.Ed.2d 364 (1992), the interest Plaintiffs seek to vindicate must at least have " 'a plausible relationship to the policies' underlying the statute." *Id.* (quoting *Clarke v. Securities Indus. Ass'n,* 479 U.S. 388, 403, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987)).

Section 706 of the APA, 5 U.S.C. § 706, governs the Court's review of the agency actions being challenged under Plaintiffs' claims brought under Section 702 of the APA and under the ESA. *See Friends of Endangered Species, Inc. v. Jantzen,* 760 F.2d 976, 981 (9th Cir.1985). *See also Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 375, 109 S.Ct. 1851, 1860, 104 L.Ed.2d 377 (1989); *Animal Defense Council v. Hodel,* 840 F.2d 1432, 1435–36 (9th Cir.1988), *modified,* 867 F.2d 1244 (9th Cir.1989); *Idaho Farm Bureau Federation v. Babbitt,* 839 F.Supp. 739, 744 (D.Idaho 1993), *vacated on other grounds,* 58 F.3d 1392 (9th Cir.Idaho 1995). Consequently, in order to meet their burden to show that they have standing to challenge the listing of the five mollusks in question under the APA, Plaintiffs must establish all four elements mentioned above.

### 1. *Injury to Aesthetic/Recreational Interests*

█ Federal courts employ a three part test to determine whether an association may assert claims on behalf of its members:

Such "representational standing" is appropriate where 1) the organization's members would have standing to sue on their own; 2) the interests the organization seeks to protect are germane to its pur-

pose; and 3) neither the claim asserted nor the relief requested requires individual participation by its members.

*Salmon River Concerned Citizens,* 32 F.3d at 1352 n. 10 (citing *International Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Brock,* 477 U.S. 274, 106 S.Ct. 2523, 91 L.Ed.2d 228 (1986); *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977)). *See also Westlands Water District v. United States,* 850 F.Supp. 1388, 1414 (E.D.Cal.1994).

In the instant action, the first element Plaintiffs must satisfy in order to establish aesthetic/recreational standing is that their members would have standing to sue on their own. To establish that their members have standing to sue on their own, Plaintiffs must "establish that the injury [their members] complain[ ] of 'falls within the "zone of interests" sought to be protected by the statutory provision whose violation forms the basis ... [of the] complaint.' " *Salmon River,* 32 F.3d at 1354 (quoting *Lujan,* 497 U.S. at 883, 110 S.Ct. at 3186). It is not disputed that injury to such aesthetic or recreational interests asserted by Plaintiffs' members in their Amended Complaint can form the basis for standing under the ESA if that is an injury of which they complain.[3] *See Defenders,* 504 U.S. at 561–63, 112 S.Ct. at 2137. In this respect, Plaintiffs assert several grounds upon which they claim to be entitled to standing. First, Plaintiffs argue that they have standing based on the adverse impact the listing has or will have on some of their members' aesthetic and recreational enjoyment of the mollusk habitat. Plaintiffs attempt to establish non-economic "aesthet-

---

**3.** It may be argued that aesthetic/recreational harm is not an injury of which Plaintiffs complain or otherwise seek to remedy in their pleadings. For example, the amended complaint filed in this action does not mention Plaintiffs' desire to vindicate their aesthetic and recreational rights protected by the ESA. Rather, the amended complaint alleges only that their *"members are aggrieved* by the listing of these five snails *because it threatens the continued viability of water rights* held by area member farmers and ranchers, and also *threatens the continuance of certain farming and ranching practices* necessary to maintain viable farm and ranch operations." Amended Complaint, p. 6 ¶ 6 (Docket No. 40)

(emphasis added). While Plaintiffs do not allege such injury in their pleadings, they have produced sworn affidavits of their members which allege injury to aesthetic and recreational interests. Christiansen Aff. (Docket No. 79); Campbell Aff. (Docket No. 77). For purposes of analyzing the standing issue, the Court will assume that aesthetic and recreational interests have been plead as contained in the affidavits of Christiansen and Campbell. However, upon application of controlling law, the Court concludes that even if the pleadings allege such injury, Plaintiffs still do not have standing based upon the following analysis.

ic/recreational" standing through the affidavits of two of their members, Earl J. Christiansen and Donald K. Campbell. Both members aver in their affidavits that they are interested in the conservation and preservation of the Snake River aquatic system, and that they routinely recreate in the mollusk habitat and aesthetically enjoy it. Christiansen further states that:

> The FWS failed to scientifically define the habitat, range, population and distribution which will imperil the continued existence of the species and adversely impact my aesthetic and recreational use of the riverine habitat.

Christiansen Aff., ¶ 13 (Docket No. 79). Both Christiansen and Campbell then aver as follows:

> The Final Rule adopted by the FWS adversely affects my recreational and aesthetic interests in riverine habitat of the Snake River.

Christiansen Aff., ¶ 14 (Docket No. 79); Campbell Aff., ¶ 14 (Docket No. 77). The threshold issue then becomes whether the injuries of which Plaintiffs' members complain are within the zone of interests protected by the ESA. After a careful analysis of controlling law, the Court concludes that they are not.

■ Plaintiffs argue that support for their contention that the sworn statements of their members are sufficient to establish an injury for the purposes of standing is found in *Idaho Conservation League v. Mumma*, 956 F.2d 1508 (9th Cir.1992). Plaintiffs assert that in *Idaho Conservation League* an injury giving rise to standing was established by the affidavit of a plaintiff who "simply declared that he routinely hiked to the Grand Mother Mountain Pinchet Butte, Mosquito Fly, and Meadow Creek Upper North Fork roadless areas. The services decisions, he explains, threaten his recreational use of those areas." *Citing Idaho Conservation League*, 956 F.2d at 1517, n. 18. What Plaintiffs fail to note in this respect is that plaintiffs in that action were challenging a decision *not* to designate roadless areas as wilderness areas. Plaintiffs contended in *Idaho Conservation League* that without the wilderness designa-

tion, the areas would ultimately be developed and this would cause them injury because they would not be able to enjoy the areas once developed. In the instant action, Plaintiffs make no such contention. To the contrary, Plaintiffs seek to "de-list" the five species so that the source of their recreation and aesthetic enjoyment, i.e. the water in the river, could be utilized for agricultural purposes. The averments of Christiansen and Campbell to the effect that because they recreate on and enjoy the river they are harmed by the FWS listing is opposite to the plaintiffs' position in *Idaho Conservation League*. It is clear from the record that Plaintiffs in the instant action cannot possibly establish that the area of the river and the water in which they recreate or aesthetically enjoy will be destroyed or harmed by the listing of the snails. Whereas, on the other hand, plaintiffs in *Idaho Conservation League* could in fact claim for standing purposes that their ability to recreate in and enjoy roadless areas of the wilderness area would be destroyed by development. Unlike the situation presented in *Idaho Conservation League*, Plaintiffs in the instant action simply do not have the necessary legal connection or relationship between the listing and preservation of the snails and the harm to the river habitat in which they recreate or aesthetically enjoy sufficient to establish standing.[4] For these reasons, the Court finds and concludes that Plaintiffs' conclusory statements of harm caused by the listing do not constitute an injury which falls within the zone of interests of the ESA.

■ Moreover, in the instant action, even if Plaintiffs' members had an injury to aesthetic or recreational interests which fell within the "zone of interests" of the ESA, Plaintiffs have failed to establish their right to litigate such interests on behalf of their members because they have failed to meet the second requirement of "representational standing." Here, as in *Pacific Northwest*, "there is nothing to show that [Plaintiffs] in making this claim [are] protecting an interest germane to [their] own purpose." *Pacific Northwest*, 38 F.3d at 1063 (citing *Hunt*, 432 U.S. at 343, 97

---

4. See also *infra*, Part II.B.3, pp. 20–21, for a discussion of a very recent Ninth Circuit case which also holds that interests such as those

asserted here by Plaintiffs are not within the zone of interests of the ESA.

S.Ct. at 2441). The Amended Complaint filed in this instant action simply alleges that Plaintiffs are organizations representing "the economic, educational and social interests" of their members. Amended Complaint, ¶¶ 4, 5 (Docket No. 40). Further, none of the affidavits filed in this action establish that protection of Plaintiffs' members' aesthetic or recreational interests are germane to their organizations' purposes.

It is important to keep in mind for standing purposes that Plaintiffs bear the burden of proving that "the interests the organization seeks to protect are germane to its purpose." *Salmon River,* 32 F.3d at 1352 n. 10. Thus, when Plaintiffs argue that the representational requirement is a non-issue, and that there are no facts in the record that would support the Federal Defendants' argument that Plaintiffs represent only the economic interests of their members, Transcript of May 2, 1995 Hearing, p. 34, the point is missed. The only reasonable conclusion that can be reached is that there are no facts in the record which establish or indicate that Plaintiffs represent anything more than the "economic, educational and social interests" of their members, Amended Complaint, ¶¶ 4, 5 (Docket No. 40). Therefore, in the Court's view, Plaintiffs have failed to carry their burden of establishing standing as organizations established to represent the aesthetic/recreational interests of their members, both because the members of Plaintiffs' organizations lack the standing to sue individually and, more importantly, because Plaintiffs are not protecting an interest germane to their organizations' purpose in this regard.

### 2. *Injury to Economic Interests*

The second ground upon which Plaintiffs assert they have standing is that the listing of the mollusks "might" harm their water rights and otherwise economically injure their farming operations. *See* Amended Complaint, ¶¶ 4, 6. Plaintiffs satisfy the requirements of "representational standing" only if this injury they seek to protect, i.e. harm to economic interests, is germane to the organizations' purposes and is within the zone of interests sought to be protected by the statutes.

Aside from the speculative nature of the tentative allegation that their members "might" be injured, the question first raised by the assertion of this type of injury is whether it meets the fourth element of the test for standing mentioned above, i.e. whether the injury falls within the "zone of interests" sought to be protected by the statutory provision whose violation forms the basis of Plaintiffs' complaint. *Salmon River,* 32 F.3d at 1354 (quoting *National Wildlife Federation,* 497 U.S. at 883, 110 S.Ct. at 3186). *See also Sierra Club,* 405 U.S. at 733, 92 S.Ct. at 1365; *Douglas County,* 48 F.3d at 1499; *Yesler,* 37 F.3d at 445 (citing *Ass'n of Data Processing Serv. Orgs. Inc.,* 397 U.S. at 153, 90 S.Ct. at 829–30). In determining whether a plaintiff in an ESA action complaining of injury to an economic interest passes the "zone of interest" test, "[t]he critical question is whether the plaintiffs' economic interest is a legal interest protected by the Endangered Species Act." *Pacific Northwest,* 38 F.3d at 1065.

The Ninth Circuit's decision in *Pacific Northwest* is particularly instructive on this point. The plaintiffs in that case, various companies purchasing power from the Bonneville Power Administration, brought an action against the Secretary of Commerce and other federal defendants under the ESA, challenging the defendants' response to the listing of the three salmon populations on the Snake River as endangered or threatened. In response to this listing, the Federal Defendants increased water flows in the Columbia River system in order to create water spills at the dams and to increase the velocity of the river in order to benefit the migration of juvenile salmon by enhancing the speed and success of the smolts' journey downstream.

The National Marine Fisheries Service subsequently issued a biological opinion concerning the impact of hydropower in the Columbia River Power System upon the listed species. The plaintiffs in *Pacific Northwest* argued that the opinion violated the ESA and the APA by addressing only hydropower and not comprehensively addressing all activities adversely affecting the listed species. Thus, plaintiffs contended in that action, hydropower operations bore a disproportionate amount of the increase in costs

resulting from the actions taken by the Federal Defendants in protecting the species.

In determining whether the plaintiffs' economic interest in *Pacific Northwest* was a legal interest protected by the ESA, the Ninth Circuit required plaintiffs to show that their interests were connected to the *protection of the species* in dispute. The court made an interesting comparison of plaintiffs' economic interest in the protection of the salmon to the manufacturer of mink coats:

> A manufacturer of mink coats has an interest in the preservation of mink, even though his interest is solely economic and he is consuming the mink. The interest of these plaintiffs in the salmon is not as closely tied to the fish as the mink manufacturer's tie to the animal; but nonetheless the plaintiffs do have a genuine economic interest in preserving the salmon and therefore an interest protected by the Endangered Species Act.

*Pacific Northwest,* 38 F.3d at 1065. Notwithstanding the foregoing, the court found the plaintiffs did not have standing to seek redress under the ESA for increases in hydropower costs resulting from the listing of the salmon:

> On analysis, a portion of this claim goes beyond the basis for the plaintiffs' standing because it focuses on the increases in cost to hydropower operations. *The plaintiffs are entitled to standing because preservation of the salmon will, in the long run, reduce their cost. But the plaintiffs are not entitled to standing simply to complain about the additional cost imposed on hydropower.* Nothing in the Endangered Species Act confers a cause of action for that purpose.

*Id.* at 1067 (emphasis added).

■ Thus, where the only injury of which a plaintiff complains is that the challenged action under the ESA results in additional costs to its business operations, *and where such harm cannot be relieved by preserving the species,* such a claim is not within the "zone of interests" as contemplated in and protected by the ESA and therefore such cost will not confer standing. *Id.; cf. Nevada Land Action Ass'n v. United States Forest Serv.,* 8 F.3d 713, 716 (9th Cir.1993) (compare the narrow scope of the ESA to the much broader purpose of NEPA, about which the Ninth Circuit held: "The purpose of NEPA is to protect the environment, not ... economic interests.... Therefore, a plaintiff who asserts purely economic injuries does not have standing to challenge an agency action under NEPA."), *cited in Douglas County,* 48 F.3d at 1499.

■ In the instant action, Plaintiffs have not presented any evidence suggesting that the costs that they allege they have incurred, or will incur as a result of the Federal Defendants' actions, will in any way be relieved by preserving the mollusks. Indeed, the allegations in Plaintiffs' Amended Complaint and their own evidence establishes otherwise. *See e.g.* Affidavit of Kelly C. Searle, ¶ 8 (Docket No. 107) (the improvements made by the irrigation district in response to the listing, which caused his increased costs of which he complains, "were necessary to prevent the degradation of the snails' habitat and thus increase the likelihood of recovery for the five snails"). Nor is there any evidence in the record establishing that Plaintiffs otherwise have a "genuine economic interest in preserving the [mollusks]." *Pacific Northwest,* 38 F.3d at 1065.

The conclusory averments contained in the supplemental affidavits filed by Plaintiffs, to the effect that "[b]ecause I utilize the waters of the Snake River drainage, my economic status, as well as the recreational and aesthetic pleasures I derive from the river, will benefit from the health of the river and the species in it," Affidavit of Gerald Merchant, ¶ 8 (Docket No. 110), are insufficient to confer standing. There is no evidence in the record suggesting that, or how, the costs Plaintiffs allege to have incurred, or will incur as a result of the challenged action, will be remedied by preserving the mollusks, or that Plaintiffs otherwise have a genuine economic interest in preserving the mollusks.

Alternatively, even if the conclusory statements in the various members' affidavits mentioned above were adequately specific and detailed from which one could reasonably conclude that economic injuries of which Plaintiffs' members complain would somehow be alleviated by preserving the mollusks, despite the allegations of the Amended Com-

plaint and extensive evidence in the record to the contrary, there is no evidence in the record indicating that the listing has impacted, or will somehow adversely impact, the five species of mollusks, thereby harming Plaintiffs' asserted economic interests in preserving the species. As indicated above, the only evidence Plaintiffs have submitted on this issue establishes that the challenged listing has aided in the recovery of the mollusks. *See* Searle Aff., ¶¶ 7–9.

Plaintiffs rely upon the following language from *Pacific Northwest* to support their contention that their economic interests are recognized legal interests protected by the ESA:

> The present endangered or threatened status of the species imposes actual costs upon the plaintiffs. They have a real economic stake in changing the status. We see no reason why that economic interest is not convertible into a legal interest. Once that legal interest is recognized, the plaintiffs qualify for standing....

*Pacific Northwest,* 38 F.3d at 1066. Although the above language is correctly quoted, Plaintiffs' reliance thereon is misplaced because the Ninth Circuit Court of Appeals reached this conclusion only after finding sufficient evidence that the *Pacific Northwest* plaintiffs had a genuine economic interest in *preserving* the endangered species. The Ninth Circuit did not hold that *any* economic interest is a legal interest protected by the ESA, but required it be to preserve the species. The language quoted immediately above merely reaffirms this portion of that court's holding—that the plaintiffs in *Pacific Northwest* had "a real economic stake in changing the status" of the species from threatened or endangered, not in overturning the *listing* of the species. In other words, the plaintiffs in *Pacific Northwest* had sufficiently established to that court's satisfaction that they had a concrete economic interest in the *preservation* of the species. However, as discussed above, the Ninth Circuit did not allow plaintiffs standing in *Pacific Northwest* simply to complain of increased costs to them resulting from the listing which could not be alleviated by protecting the species. Rather, plaintiffs had standing only to the extent that the threatened economic injuries could be prevented by *preserving* the species. It is clear from the record before the Court that

Plaintiffs in the instant action have produced no such evidence suggesting that the threatened economic injuries of which they complain would be prevented by *preserving* the mollusks, or that Plaintiffs have an otherwise genuine interest in preserving any of the five species of mollusks.

In the Court's view, Plaintiffs' reliance upon *Central Arizona Water Conservation Dist. v. United States Environmental Protection Agency,* 990 F.2d 1531 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 94, 126 L.Ed.2d 61 (1993), *cited in Pacific Northwest,* 38 F.3d at 1066, is similarly misplaced. In *Central Arizona,* the Ninth Circuit held that the plaintiff water district had standing to challenge a regulation of the Environmental Protection Agency, "even though the purpose of the Clean Air Act was to 'enhance the air quality in national parks,' 42 U.S.C. § 7470(2) and the water district's interest was economic." *Pacific Northwest,* 38 F.3d at 1065–66. Plaintiffs conclude and urge based on this language that they should also have standing in this instant action to challenge the listing of the mollusks.

However, the Ninth Circuit in *Central Arizona* clearly based its holding to allow standing upon the following:

> [T]he Districts' economic injury sufficiently falls within the "zone of interests" protected by the visibility provisions of the [Clean Air] Act [because] Section 169A of the Act requires the Administrator to consider "the costs of compliance" in setting standards to achieve reasonable progress towards the national visibility goal. 42 U.S.C. § 7491(g)(1). As entities required to pay those costs of compliance ... Petitioners [are within the "zone of interests" protected by the Act and therefore] have standing to bring this [action].

990 F.2d at 1539. Thus, because the Clean Air Act itself provided that the agency must consider the economic impact the proposed regulation may have on interested parties who complain about such regulations, such parties' economic interests clearly fell within the "zone of interests" protected by the statute.

However, for purposes of granting standing, the ESA has no provision similar to the

"costs of compliance provision of the Clean Air Act." To the contrary, the United States Supreme Court has expressly held that "[t]he plain intent of Congress in enacting [the ESA] was to halt and reverse the trend toward species extinction, *whatever the cost.*" *Tennessee Valley Auth. v. Hill,* 437 U.S. 153, 184, 98 S.Ct. 2279, 2297, 57 L.Ed.2d 117 (1978) (emphasis added), *cited in Douglas County,* 48 F.3d at 1506. Thus, "plaintiffs are not entitled to standing simply to complain about the additional cost imposed [on their farming operations]. Nothing in the Endangered Species Act confers a cause of action for that purpose." *Pacific Northwest,* 38 F.3d at 1067.

### 3. *Bennett v. Plenert—The Ninth Circuit's Recent Confirmation of Standing Requirements*

While the Court was in the final stages of writing this opinion, the Ninth Circuit released *Bennett v. Plenert,* 63 F.3d 915 (9th Cir.(Or.)1995), which helps resolve the issues presented here and confirms this Court's analysis on the preceding pages.

In *Bennett,* two Oregon ranch operators and two irrigation districts challenged the government's preparation of a biological opinion concluding that water levels in two reservoirs should be maintained to preserve two species of fish. *Id.* 916–17. The Ninth Circuit Court of Appeals held that the plaintiffs in that action did not have standing because the injuries of which they complained did not fall within the "zone of interests" protected by the ESA. Particularly important to the instant action is the following:

> Having concluded that the zone of interests test applies, we must next determine whether the ESA protects plaintiffs who assert an interest of the type asserted here. We answer the question in the negative, *holding that only plaintiffs who allege an interest in the preservation of endangered species fall within the zone of interests protected by the ESA.*

*Id.* at 919–20 (emphasis added).

Regarding the plaintiffs' claim to aesthetic and recreational interests, the court explained:

> The fact that the ranchers allege that they have an aesthetic and recreational interest in lower lake levels does not change anything. That interest—even though not economic in nature—does not serve the purpose of preserving any endangered species. Thus, it is not an interest protected by the ESA.

*Id.* at 921, n. 8. Similarly, in the instant action, while Plaintiffs' members complain of injury to their aesthetic/recreational interests, this alleged injury is not within the zone of interests of the ESA because to remedy such injury would not serve the purpose of protecting or preserving the listed snails. "Thus, it is not an interest protected by the ESA." *Id.* With respect to plaintiffs' asserted economic interests, the court in *Bennett* explained, "[w]e see no reason why the ESA should be construed in a different manner from either NEPA or the Clean Water Act." *Id.* at 920. Under NEPA, "we held that plaintiffs do not have standing under NEPA to protect 'purely' economic interests, because the environmental purposes of the Act would not be furthered by permitting suits premised on such interests." *Id.* at 919–20 (citations omitted).

Based upon all of the foregoing, the Court concludes in this instant action that because Plaintiffs cannot establish that the injuries of which they complain, whether to their aesthetic/recreational interests or their economic interests, fall within the "zone of interests" protected by the ESA, they have not met their burden of establishing standing to challenge the listing of the mollusks under the ESA or the APA.

### 4. *"Citizen Suit"/Procedural Standing*

■ Finally, Plaintiffs contend that they are entitled to standing to challenge the listing of the mollusks by application of the "citizen suit" provision of the ESA, which provides, in pertinent part, that "any person may commence a civil suit on his own behalf (A) to enjoin any person, including the United States and any other governmental instrumentality or agency ... who is alleged to be in violation of any provision of this chapter." 16 U.S.C. § 1540(g)(1)(A). Plaintiffs therefore argue that the ESA's "citizen suit" provision automatically grants standing to them to assert all their claims of ESA violations.

The United States Supreme Court directly addressed and rejected this argument in *Defenders*. The Court held that the "citizen suit" provision cannot constitutionally be held to abrogate the requirement that the party seeking review must himself have suffered or is immediately in danger of suffering a concrete injury as a result of the allegedly invalid agency action. *Defenders*, 504 U.S. at 570–80, 112 S.Ct. at 2142–46. Therefore, Plaintiffs must still establish all the necessary requirements for standing mentioned above if the "citizen suit" provision is to avail them in this action. *Id.*

Plaintiffs argue they are nevertheless entitled to standing to redress procedural injuries based upon what the Ninth Circuit has called "footnote seven standing," so named for the standing analysis set forth in footnote seven of *Defenders*. In footnote seven, the Supreme Court discussed standing to assert "procedural rights":

> There is this much truth to the assertion that "procedural rights" are special: The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy. Thus, under our case-law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an Environmental Impact Statement, even though he cannot establish with any certainty that the Statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years.

*Defenders*, at 572 n. 7, 112 S.Ct. at 2142 n. 7. Hence, if persons or entities can qualify for this type of standing, they need not meet the normal requirements of immediacy and redressability. *Id.*

■ However, it is well established that not just any procedural injury will give rise to procedural standing. *Yesler*, 37 F.3d at 446. In order to establish procedural standing under footnote seven, Plaintiffs must satisfy three essential elements: (1) that they are persons who have been accorded a procedural right to protect their concrete interests, and (2) that Plaintiffs have some threatened concrete interests that are the ultimate basis of their standing. *Douglas County*, 48

F.3d at 1500. Put another way, these first two elements require that Plaintiffs seek "to enforce a procedural requirement the disregard of which could impair a separate concrete interest." *Yesler*, 37 F.3d at 446 (quoting *Defenders*, at 570–72, 112 S.Ct. at 2142). Finally, and most important here, Plaintiffs must show that this separate concrete interest is (3) within the "zone of interests" that the ESA is designed to protect. *Douglas County*, 48 F.3d at 1500–01 (citing *Pacific Northwest Generating Cooperative v. Brown*, 25 F.3d 1443, 1450 (9th Cir.), *modified*, 38 F.3d 1058 (9th Cir.1994) (cited language unchanged); *Friends of the Earth v. United States Navy*, 841 F.2d 927, 932 (9th Cir. 1988)). *See also Bennett v. Plenert*, 63 F.3d at 917, n. 1 (9th Cir.1995) ("We note that the zone of interests test applies even to plaintiffs who have established constitutional standing premised on a procedural injury.").

Although the court in *Douglas County* did not specify the origin of this "zone of interest" requirement, it may arise either from the "prudential limitations" on standing, *see Pacific Northwest*, 38 F.3d at 1065 (although the court noted that it is an open question whether the "prudential zone of interests" test is required for standing under the ESA, the court "assume[d] that the requirement must be met"); or it may also arise directly from footnote seven. *See Defenders*, at 573 n. 8, 112 S.Ct. at 2143 n. 8 (to obtain procedural standing, plaintiffs must establish that "the procedures in question are *designed* to protect some threatened concrete interest of his that is the ultimate basis of his standing") (emphasis added). Regardless of its origin, however, the Ninth Circuit clearly and unequivocally requires that the "zone of interest" test be satisfied for "footnote seven" procedural standing. *See Bennett*, 63 F.3d at 917 n. 1; *Douglas County*, 48 F.3d at 1500–01.

In applying these three elements necessary for "footnote seven" procedural standing to the facts in the instant action, it is helpful to examine how they have been applied by the Ninth Circuit Court of Appeals in recent decisions. In *Pacific Northwest*, the Ninth Circuit held that the plaintiffs in that action were arguably in the position of the above

hypothetical plaintiff in *Defenders* because the *Pacific Northwest* plaintiffs "are entities whose way of conducting business may be affected by the alleged failures of the federal agencies under the Endangered Species Act." *Pacific Northwest,* 38 F.3d at 1065. Consequently, plaintiffs in that action had a concrete interest threatened by the proposed listing of the salmon as endangered species. However, "the critical question is whether [this] interest is a legal interest protected by the ESA." 38 F.3d at 1065. The Court concluded that because "[these Plaintiffs] have a genuine interest in *preserving* the salmon [they] therefore [have] an interest protected by the ESA." *Id.* (emphasis added). The *Pacific Northwest* plaintiffs were therefore able to satisfy the most important "zone of interest" requirement.

Similarly, in *Douglas County,* the county was able to establish "footnote seven" procedural standing because it satisfied the three elements described above. With respect to the first element, the county had been accorded a procedural right to comment on the Environmental Impact Statement "because NEPA provides that local agencies ... may comment on the proposed federal action." 48 F.3d at 1501. With regard to the second element, the county had a concrete interest in the protection of land in which it had a proprietary interest, which was the ultimate basis of its standing. Finally, and most importantly, the Ninth Circuit found that the injury of which the county complained was within the "zone of interests" protected by NEPA because:

> The affidavit of Kenneth Hendrick, director of the Land Department for Douglas County, expresses concerns with the proposed critical habitat designation. Hendrick alleges that the land management practices on federal land could affect adjacent county-owned land: "By failing to properly manage for insect and disease control and fire, the federal land management practices threaten the productivity and environment of the adjoining [county] lands." (cites record).

These statements describe concrete, plausible interests, *within NEPA's zone of concern for the environment,* which underlie the County's asserted procedural interests. It is logical for the County to assert

that its lands could be threatened by how the adjoining federal lands are managed.

48 F.3d at 1501 (emphasis added). The court therefore held in *Douglas County* that the county had established a concrete interest by virtue of its proprietary interest in the adjoining land, that the interest was within the "zone of interests" protected by NEPA because the interest sought to be protected was for the protection of the environment, and that such an interest was threatened by the "critical habitat" designation.

■ In the instant action, Plaintiffs clearly have a concrete interest by virtue of their proprietary interest in land and water in close proximity to the areas that will be affected by the mollusk listing, similar to the concrete interest of the hypothetical plaintiff near the proposed dam in footnote seven, and similar to both of the plaintiffs in *Pacific Northwest* and *Douglas County.* However, as discussed above, there is no showing here similar to that established in *Pacific Northwest* that Plaintiffs' economic interests are linked to the *preservation* of the mollusks. Nor have Plaintiffs made a showing similar to the plaintiffs in *Douglas County* that the threat to their proprietary interests in their property and water rights caused by the mollusk listing is a threat to the species on that property. To the contrary, the Amended Complaint on file here clearly and unambiguously describes the threat to Plaintiffs' proprietary interests as follows:

> Listing of these five mollusks might result in the loss of water for agricultural as well as family use and/or in the restriction on the farming practices and use of privately owned agricultural lands, having an adverse impact on individual farmers and ranchers.

> \*　　\*　　\*　　\*　　\*　　\*

> IFB, AFBF and their individual members are aggrieved by the listing of these five snails because it threatens the continued viability of water rights held by area member farmers and ranchers, and also threatens the continuance of certain farming and ranching practices necessary to maintain viable farm and ranch operations.

Amended Complaint, ¶¶ 4, 6. Clearly, these injuries of which Plaintiffs complain do not "fall[ ] within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the basis ... [of the] complaint." *Salmon River*, 32 F.3d at 1354 (quoting *National Wildlife Federation*, 497 U.S. at 883, 110 S.Ct. at 3186).

 Furthermore, Plaintiffs have not demonstrated, even if they were complaining of injury to a concrete, proprietary interest in the preservation of the mollusks or other species, that such an interest is "threatened" or "could be impaired" by the allegedly improper listing of the mollusks. As previously discussed, Plaintiffs' own evidence submitted in this respect demonstrates that the listing of which they complain has resulted in measures that were necessary and beneficial to the mollusks and their habitat, rather than harmful. *See* Searle Aff., ¶¶ 7–9. Thus, even assuming Plaintiffs have a genuine interest in preserving species whose habitat is adjacent to land and water in which they have a proprietary interest, they have failed to establish that they are "seek[ing] to enforce a procedural requirement the disregard of which could impair [that] separate concrete interest." *Yesler*, 37 F.3d at 446 (quoting *Defenders*, 504 U.S. at 572 n. 7, 112 S.Ct. at 2142 n. 7).

Consequently, because Plaintiffs have not met their burden to show that the injuries of which they complain fall within the "zone of interests" protected by the ESA and, alternatively, because Plaintiffs have not shown that their interest in the preservation of the mollusks or other species could be impaired by the challenged action, Plaintiffs are not entitled to procedural standing under footnote seven. Therefore, after careful consideration of the record and controlling precedent, the Court concludes that because Plaintiffs have failed to meet their burden of establishing standing to bring suit under the APA or directly under the ESA's "citizen suit" provision, Defendants' cross-motion for summary judgment must be granted on the issue of standing.

## C. *FACA Procedural Violations*

The only surviving claims not brought under the ESA or under the APA are Plaintiffs' claims that the Federal Defendants violated the procedural provisions of the FACA. Initially, the Federal Defendants argue that Plaintiffs lack standing to complain about the alleged FACA violations. Alternatively, they argue that Plaintiffs' FACA claims are barred by the doctrine of laches. On the merits, the Federal Defendants contend that the FACA does not apply to the committee in question, and finally, even if it did, an injunction "de-listing" the mollusks is not a proper remedy.

### 1. *Standing to Challenge Procedural Violations*

In their cross-motion for summary judgment, the Federal Defendants first argue that Plaintiffs do not have standing to complain of the FWS's alleged failure to follow the FACA procedures because they have not suffered any injury as a consequence.

 As discussed above, Plaintiffs bear the burden of establishing, at a constitutional minimum, the following elements: (1) plaintiffs must have personally suffered a concrete "injury in fact" to a legally protected interest, or that such an injury is imminent or "certainly impending"; (2) the injury must be fairly traceable to the challenged action; and (3) it must be likely, as opposed to merely speculative, that a favorable decision will redress the injury. *Defenders*, at 559–61, 112 S.Ct. at 2136; *Pacific Northwest*, 38 F.3d at 1062; *Yesler*, 37 F.3d at 445.

In this regard, the Federal Defendants first argue that Plaintiffs have failed to show that the FACA violations caused them any injury. Thus, the Federal Defendants argue, because Plaintiffs received actual notice of the technical review panel, actively participated in the composition, meetings, and summary report of the technical review panel, and even developed their own transcript by video-taping the proceedings, they suffered no concrete injury as a result of the alleged FACA violations. Alternatively, they argue that even if Plaintiffs could establish an injury, the procedural injuries of which they complain are not redressed by their request for relief; i.e., "de-listing" the mollusks.

 However, such requirements of causation and redressability are relaxed where a

plaintiff can establish a "procedural injury" under footnote seven of *Defenders.* 504 U.S. at 572 n. 7, 112 S.Ct. at 2142 n. 7. Here, with respect to the FACA claim, Plaintiffs in this instant action are "arguably in the position of the hypothetical plaintiff in *Defenders....*" *Pacific Northwest,* 38 F.3d at 1064. With respect to the first element necessary for standing, the FACA clearly accords Plaintiffs the procedural rights they claim were denied them, i.e., that FWS failed to (1) prepare and file a charter; (2) chair the meeting; (3) publish notice of the meeting; and (4) prepare and maintain minutes of the meeting. *See* 5 U.S.C.App. 2, §§ 9, 10. Furthermore, as previously indicated, Plaintiffs' members clearly have concrete economic and other similar interests in the land and water in which they have proprietary interests adjacent to the areas affected by the listing.

Moreover, unlike the foregoing analysis of procedural injuries under the ESA, Plaintiffs do not experience similar problems in satisfying the "zone of interests" test under the FACA. The purpose of the FACA is "to cure specific ills, above all the wasteful expenditure of public funds for worthless committee meetings *and biased proposals.*" *Public Citizen v. Department of Justice,* 491 U.S. 440, 453, 109 S.Ct. 2558, 2566, 105 L.Ed.2d 377 (1989) (emphasis added). Clearly, Plaintiffs' asserted injury, i.e. that the FACA violations resulted in a biased recommendation from the committee, falls within the "zone of interests" protected by the FACA.

Having satisfied all three elements for procedural standing, Plaintiffs need not satisfy the standards of causation and redressability because "Congress has linked [these procedures] causally" to unbiased recommendations. *Pacific Northwest,* 38 F.3d at 1065. Consequently, Plaintiffs need not show that the failure of the FWS to follow the FACA procedures caused the ultimate injuries which they assert as the ultimate basis of their standing, or that the requested remedy will redress the asserted injury. Thus, the Federal Defendants' argument that "de-listing" the mollusks will not redress the injury of which Plaintiffs complain is without merit. The Court therefore concludes that Plaintiffs at least have "footnote seven" procedural standing to complain about the alleged failure of the FWS to comply with the FACA.

### 2. *Availability of Injunctive Relief*

Having concluded that Plaintiffs have "footnote seven" standing to challenge the Federal Defendants' failure to comply with the FACA, the Court will address the issue on the merits. The Federal Defendants first argue that Plaintiffs' claim under the FACA is barred by the doctrine of laches because they waited twenty-six months, until after the final rule listing the mollusks was issued, to seek an injunction. The Federal Defendants also argue that the technical review panel was not an "advisory committee" within the meaning of the FACA. Finally, the Federal Defendants contend that injunctive relief invalidating the final listing is inappropriate under the FACA. The Court need not address the first two issues because, even assuming Plaintiffs' claims were not barred by laches and the technical review panel was an "advisory committee," because a mandatory injunction "de-listing" the mollusks is not an appropriate remedy for the alleged FACA violations.

In *Seattle Audubon Soc'y v. Lyons,* 871 F.Supp. 1291 (W.D.Wash.1994), the court was faced with a situation almost identical to that presented by Plaintiffs' FACA claim in the instant action. There, the plaintiffs, comprised of environmental groups and an organization representing the timber industry, challenged the validity of a forest management plan adopted by the Secretaries of Agriculture and Interior, allegedly in violation of the FACA. The Forest Ecosystem Management Assessment Team ("FEMAT"), an interagency, interdisciplinary team of scientists, sociologists, and other experts, was established by the executive branch of the federal government to conduct a conservation and management assessment of all federal forests within the range of the northern spotted owl. In an earlier, related case, the logging organization obtained a declaratory judgment that FEMAT was convened in violation of the FACA requirements, including those of open meetings and being constituted with a balanced membership and pursuant to filed advisory committee charter.

Thereafter, in *Seattle Audubon Soc'y*, the group sought an injunction invalidating the management plan for the FACA violations. The court held that "FACA can and should be enforced ... by an order requiring that a proposed or existing committee comply with the statute." *Id.* at 1309. Nevertheless, the court declined to grant the requested injunctive relief because "once a committee has served its purpose, courts generally have not invalidated the agency action even if there were earlier FACA violations," *id.*, quoting Judge Friendly as follows:

So far as we are aware, no court has held that a violation of FACA would invalidate a regulation adopted under otherwise appropriate procedures, simply because it stemmed from the advisory committee's recommendations, or even that pending rulemaking must be aborted and a fresh start made. We perceive no sound basis for doing so. Applicable rulemaking procedures afford ample opportunity to correct infirmities resulting from improper advisory committee action prior to the proposal.

*Id.* at 1309–10 (quoting *National Nutritional Foods Ass'n v. Califano*, 603 F.2d 327, 336 (2nd Cir.1979) (Friendly, J.)) (also citing *Center for Auto Safety v. Tiemann*, 414 F.Supp. 215, 226 (D.D.C.1976), *remanded on other grounds*, 580 F.2d 689 (D.C.Cir.1978) (availability of subsequent opportunity for comment and for review of the final regulation under the Administrative Procedure Act cures a FACA violation); *Washington Legal Foundation v. Dept. of Justice*, 691 F.Supp. 483, 495–96 (D.D.C.1988), *aff'd sub nom.*, *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (public accountability aspects of the FACA satisfied by subsequent opportunity to question)).

Plaintiffs in the instant action make a similar claim that they are entitled to an injunction invalidating the final rule listing the mollusks, due to the alleged FACA violations. They cite *Alabama–Tombigbee Rivers Coalition v. Department of Interior*, 26 F.3d 1103 (11th Cir.1994) in support of that claim. In *Alabama–Tombigbee*, the plaintiffs, a group of businesses and organizations that operated in Alabama and Mississippi, alleged that the defendants' listing of the Alabama sturgeon as an endangered species would adversely impact them and thousands of jobs in the area. Therefore, when the FWS restructured the scientific advisory panel appointed to assess the status of the sturgeon in violation of the FACA, the plaintiffs gave notice three days before the planned release of the committee report of their intention to seek a temporary restraining order to stop the release of the report. The FWS nevertheless announced in a press release that the scientists' summary findings supported the listing of the sturgeon as an endangered species. *Id.* at 1105.

As a result of the FACA violations, the district court permanently enjoined the defendants from "publishing, employing and relying upon the Advisory Committee report ... for any purpose whatsoever, directly or indirectly, in the process of determining whether or not to list the Alabama sturgeon as endangered species." *Id.* The Eleventh Circuit affirmed, citing with approval the following analysis of the district court:

A simple "excuse us" cannot be sufficient. It would make FACA meaningless, something Congress certainly did not intend.... The court sees no reason to retreat from its conclusion that FACA was designed by Congress to prevent the use of any advisory committee as part of the process of making important federal agency decisions unless that committee is properly constituted and produces its report in compliance with the procedural requirements of FACA, particularly where, as in this case, the procedural shortcomings are significant and the report potentially influential to the outcome.

*Id.* at 1106. Therefore, the Eleventh Circuit held that because "[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction," *id.* at 1107 (citing *Califano v. Yamasaki*, 442 U.S. 682, 705, 99 S.Ct. 2545, 2559–60, 61 L.Ed.2d 176 (1979)), an injunction against using the report which was obtained in violation of the FACA was an appropriate remedy.

Significantly, in a footnote the Eleventh Circuit "acknowledge[d] that other Circuits

having affirmed the denial of injunctive relief requested as a result of FACA violations." *Id.* at 1106 n. 8 (citing *National Nutritional Foods,* 603 F.2d 327). However, the Eleventh Circuit recognized that those courts "found that on the facts of the cases before them, injunctive relief was inappropriate. We have different facts before us and, accordingly, reach a different result." *Id.*

Thus, when the plaintiffs in *Seattle Audubon Soc'y* also cited *Alabama–Tombigbee* in support of their contention that injunctive relief invalidating the listing was appropriate, the district court appropriately distinguished the facts involved in *Seattle Audubon Soc'y* from those presented in *Alabama–Tombigbee,* as suggested by the Eleventh Circuit in the latter case. The controlling fact distinguishing the two cases was that in *Alabama–Tombigbee,* the plaintiffs obtained a temporary restraining order *before* the report was distributed and used by the government. *Seattle Audubon Soc'y,* 871 F.Supp. at 1310. Thus, the court concluded that "*Alabama–Tombigbee* would not require automatic invalidation of the agency action, and can be reconciled with the more numerous cases denying injunctive relief." *Id.*

In addition, the fact that the FEMAT report in *Alabama–Tombigbee* had been circulated during the ninety-day comment period and was subject to public comments and criticisms, including those by the plaintiffs, provided further support for the court's conclusion that the "procedures afford[ed] ample opportunity to correct infirmities." *Id.* (quoting *National Nutritional Foods,* 603 F.2d 327).

 In the instant action, Plaintiffs formally voiced their objections to the FACA violations as early as May 7, 1992 (A.R.IV.A. 145). They nevertheless waited to seek the injunctive relief they request, i.e. invalidation of the final rule listing the mollusks, rather than simply foreclosing the use of the report, until well after the final decision listing the mollusks was issued on December 14, 1992. *See* Amended Complaint, ¶ 64. Thus, under *Seattle Audubon Soc'y* and *National Nutritional Foods,* although Plaintiffs might have obtained an injunction against the use of the Falter report, Plaintiffs cannot now obtain the requested injunctive relief of "de-listing" the mollusks after the final decision has been made.

Furthermore, as in *Seattle Audubon Soc'y,* the instant record is replete with evidence that the proposed listing, and even the Falter report, were subjected to public comments and criticisms, including those made by Plaintiffs before the report was issued. Plaintiffs, both through their members and through their consultant, Dr. Richard Konopacky, participated extensively in the public hearings, the panel meeting, and by submitting written comments. *See e.g.,* A.R. II. B.23 (letter from D.L. Osbourne, Gooding County Farm Bureau); A.R. II.B.35 (letter from Rayola Jacobson, Idaho Farm Bureau); A.R. II.C.7 (testimony of Rayola Jacobson); A.R. II.D.6; II.D.12 (testimony and appearance of Jim Yost, Idaho Farm Bureau); A.R. II.C.1 at 52–56 (testimony of Rayola Jacobson); A.R. II.C.1. at 31–38; II.D.1 at 9–17 (oral testimony by Dr. Konopacky on behalf of Farm Bureau); A.R. III.A.8 (Dr. Konopacky present at the panel meeting).

Additionally, Plaintiffs, through their consultant Dr. Konopacky, twice took advantage of the opportunity given him and other panel members in attendance and others who did not attend the meeting, to submit comments on Dr. Falter's draft summaries of the panel discussions before he submitted the final summary report to the FWS. *See* A.R. II. F.57; II.F.58. In fact, Dr. Konopacky had the opportunity to reply substantively to the post-meeting comments on the summary upon which Plaintiffs base most of their FACA objections, but it appears from a review of the record that he chose to make only procedural comments. *See* A.R. II.F.58. Consequently, it is clear here, as in *National Nutritional Foods* and *Seattle Audubon Soc'y,* that Plaintiffs were "afford[ed] ample opportunity to correct infirmities." *Seattle Audubon Soc'y,* 871 F.Supp. at 1310 (citing *National Nutritional Foods,* 603 F.2d 327).

Accordingly, the Court concludes in light of the foregoing factual history and legal authorities that even if Dr. Falter's technical review panel constituted an "advisory committee," and Plaintiffs claims based on the FACA violations were not barred by the doctrine of laches, Plaintiffs are not entitled

to an injunction "de-listing" the mollusks on that basis now that the final rule has been issued. The Federal Defendants' cross-motion for summary judgment should therefore be granted.

### D. *Summary and Observation*

In light of the foregoing, the Court finds that Plaintiffs have failed to establish standing to challenge the listing of the mollusks under the ESA and APA based on injury to their members' aesthetic/recreational interests and to their economic interests. The Court is also satisfied that Plaintiffs have failed to establish "footnote seven" procedural standing to challenge the listing of the mollusks under the "citizen suit" provision of the ESA. Finally, Plaintiffs' claim for injunctive relief invalidating the final decision listing the mollusks under the FACA is not available in the circumstances of this action. Consequently, the Court concludes that the Federal Defendants' cross-motion for summary judgment must be granted on those issues, and the instant action must be dismissed because Plaintiffs do not have standing to bring this action.

The Court's conclusion that Plaintiffs do not have standing to assert their claims in this action is compelled by the recent United States Supreme Court and Ninth Circuit Court of Appeals rulings on the doctrine of standing, which this Court is bound to follow. Moreover, the Court's ruling is required by the specific language of the ESA, as interpreted by the federal appellate courts, that compels this conclusion. Any other decision made by this Court would not be based on controlling legal principles or precedent, and would be judicial legislation which is not the role of the judiciary in resolving disputes.

Consequently, the relief Plaintiffs seek is best directed to Congress and committed to the political process, wherein such issues and debates are handled most consistently within our constitutional and democratic form of government. In the Court's view, it is Congress and the legislative process, and not the judiciary, that has the authority and is in the best position to remedy the inequities presented in the Endangered Species Act that have been so aptly demonstrated in this case.

### III.

### REMAINING MOTIONS

Both parties filed motions to strike various affidavits and declarations on the basis that because review of this action is limited to the administrative record, the disputed affidavits and declarations are inappropriate and should not be considered by the Court.

These affidavits and declarations go to the substantive issue of whether the FWS properly listed the mollusks as endangered or threatened. Therefore, because the Court has concluded that Plaintiffs do not have standing to challenge the listing under the ESA or the APA, the Court does not reach the substantive issues. Consequently, the motions to strike are MOOT.

Federal Defendants' Motion to Enlarge Time to Respond to Plaintiffs' Supplemental Briefing (Docket No. 115) is granted nunc pro tunc.

### IV.

### ORDER

Based on the foregoing, and good cause appearing therefor,

IT IS HEREBY ORDERED:

1. Plaintiffs' Motion for Summary Judgment (Docket No. 46) is DENIED.

2. Federal Defendants' Cross–Motion for Summary Judgment (Docket No. 53) is GRANTED, inasmuch as Plaintiffs have failed to meet their burden of establishing standing to challenge the listing of the mollusks as endangered or threatened under the APA and ESA, and because the injunctive remedy Plaintiffs seek by their FACA claim, i.e. "de-listing" the mollusks, is not appropriate.

3. Federal Defendants' Motion to Strike Plaintiffs' Affidavits Filed in Support of Motion for Summary Judgment (Docket No. 71) is MOOT.

4. Farm Bureau's Motion to Strike Frest and Hershler Affidavits (Docket No. 80) is MOOT.

5. Federal Defendants' Motion to Enlarge Time to Respond to Plaintiffs'

Supplemental Briefing (Docket No. 115) is GRANTED nunc pro tunc.

6. This action is DISMISSED in its entirety.

SO ORDERED.