26 F.3d 1103
 24 Envtl. L. Rep. 21,333
 ALABAMA-TOMBIGBEE RIVERS COALITION, Offa S. Nichols,
Plaintiffs-Appellees,
Edward Wilkinson Mudd, Jr., Intervenor,
v.
DEPARTMENT OF INTERIOR, The Fish & Wildlife Service of the
United States, George T. Frampton, Assistant Secretary for
Fish and Wildlife and Parks, Kenneth Smith, Deputy Director,
U.S. Fish & Wildlife Service, James B. Steward, Bruce
Babbitt, Defendants-Appellants.
 No. 94-6089.
 United States Court of Appeals,
Eleventh Circuit.
 July 27, 1994.
 
 Mark B. Stern, Patricia A. Millett, Dept. of Justice, Civ. Div., Appellate Staff, Washington, DC, for defendants-appellants.
 Will Hill Tankersley, Jr., Marshall Timberlake, Balch & Bingham, Birmingham, AL, for plaintiffs-appellees.
 Edward N. Mudd, Jr., Birmingham, AL, for intervenor.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before KRAVITCH, Circuit Judge, FAY and HENDERSON, Senior Circuit Judges.
 FAY, Senior Circuit Judge:
 
 
 1
 The Fish and Wildlife Service of the United States Department of the Interior ("FWS") appeals an order entered by the District Court for the Northern District of Alabama granting a permanent injunction against FWS' use of a scientific report prepared in violation of the Federal Advisory Committee Act ("FACA")[1]. Because we agree with the District Court that the report was prepared in violation of FACA and that injunctive relief is appropriate, we affirm.
 
 I. FACTS
 
 2
 On June 15, 1993, FWS published a proposed rule to list the Alabama Sturgeon[2] as an endangered species and to designate its critical habitat. Pursuant to the Endangered Species Act, the Secretary of the Interior has one year to promulgate a final rule that either lists the species as endangered or to withdraw the proposed rule.
 
 
 3
 Accordingly, Secretary Babbitt directed FWS to organize a scientific advisory panel in an effort to "consider the best available scientific information and assess the current status of the species." See May 25, 1993 Babbitt Letter to Senator Howell Heflin (R1-1 ex. A). In response to Babbitt's directive, FWS organized an original panel of four scientists to conduct the necessary analysis. After the Alabama Congressional delegation raised concerns regarding the objectivity of the panel and the topics to be analyzed, FWS reconstituted the panel with nine members. Of the nine member panel, none were drawn from any of the six scientists that the Alabama Congressional delegation proposed. Furthermore, FWS retained, as panel members, three of the four original scientists to which the delegation had objected. Consequently the Plaintiff, Alabama-Tombigbee Rivers Coalition ("Coalition")[3], felt motivated to express its concern regarding the operation and conclusions of the advisory panel.
 
 
 4
 Acting on that concern, on October 12, 1993, the Coalition wrote a letter to John D. Leshy, Solicitor for the Department of the Interior, regarding FWS' compliance with FACA. In response, the Department of the Interior stated in writing that it would provide legal advice to the officials in order to "fully compl[y] with the requirements of the law, including the FACA...." See Leshy Letter to William Satterfield (R1-1 ex. B).
 
 
 5
 It appears from the record that the government originally intended for the scientists on the "panel" to conduct independent evaluations and file, individual reports.[4] However, shortly before the "panel" was to convene to relay their individual reports, FWS substantially changed the structure of the "panel." The modified structure was for the scientists to meet and compile a single collective report.[5]
 
 
 6
 Three days before the planned release of the committee report, the Coalition gave notice of its intention to seek a temporary restraining order in an effort to stop the release of the report because of purported FACA violations. The same day that the Coalition filed its complaint seeking a TRO, preliminary and permanent injunction against the release, use of, and reliance upon the scientific committee report, FWS expeditiously announced in a press release that the scientists' summary findings supported the listing of the Alabama Sturgeon as an endangered species.[6]
 
 
 7
 Subsequently, in an order dated December 22, 1993, as a result of FWS' FACA violations, the district court permanently enjoined the defendants from "publishing, employing and relying upon the Advisory Committee report which is the primary subject of the above entitled cause, for any purpose whatsoever, directly or indirectly, in the process of determining whether or not to list the Alabama sturgeon as an endangered species." (R2-62) FWS appeals from that finding and raises the following issue for our review: Whether the district court's injunction should be overturned because it frustrates the purposes of the Federal Advisory Committee Act, the Endangered Species Act, and the Administrative Procedure Act?[7]
 
 II. DISCUSSION
 A. STANDARDS OF REVIEW
 
 8
 Given the nature of this case, we find it necessary to employ two different standards of review with respect to the two separate inquiries we must make. First, we must conduct a de novo review of the district court's authority to grant injunctive relief under FACA as this inquiry involves the interpretation of a statute. Centel Cable Television Co. v. Thomas J. White Dev. Corp., 902 F.2d 905, 908 (11th Cir.1990). FWS has not been able to point to any authority that clearly prohibits injunctive relief for a FACA violation. Furthermore, after our review of the Federal Advisory Committee Act, we do not think such a remedy is unavailable.[8]
 
 
 9
 Second, having determined that the grant of injunctive relief for a violation of FACA is within the district court's authority, we turn to the standard of review applicable to the grant of such relief. We review the grant of injunctive relief under an abuse of discretion standard. Centel Cable, 902 F.2d at 910.
 
 B. THE INJUNCTION
 
 10
 The Federal Advisory Committee Act requires, inter alia: (1) a written charter that explains the "mission" of the committee; (2) timely notice of committee meetings in the Federal Register; (3) fair and balanced composition of the committee; (4) government submission of a plan to the committee to ensure that the same is not "inappropriately influenced" by the appointing authority; (5) that the committee meetings be open to the public; (6) that the government prepare and provide detailed minutes of the committee meetings; (7) that the information upon which the committee relies in its determination be made available for public inspection. See 5 U.S.C.App. Sec. 5 et seq.
 
 
 11
 Through the passage of FACA, Congress sought to recognize the importance of having advisory committees to the Executive Branch be completely open to public observation and comment. See generally Public Citizen v. United States Dept. of Justice, 491 U.S. 440, 459, 109 S.Ct. 2558, 2569, 105 L.Ed.2d 377 (1989) (principal purpose to enhance public accountability of advisory committees); Washington Legal Foundation v. United States Dept. of Justice, 691 F.Supp. 483, 490 (D.D.C.1988) (central purpose to open to public scrutiny the manner in which the government obtains advice from private individuals), aff'd sub nom. Public Citizen v. United States Dept. of Justice, 491 U.S. 440, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989).
 
 
 12
 Because FACA's dictates emphasize the importance of openness and debate, the timing of such observation and comment is crucial to compliance with the statute. Public observation and comment must be contemporaneous to the advisory committee process itself. Public Citizen v. National Economic Comm'n., 703 F.Supp. 113, 129 (D.D.C.1989). If public commentary is limited to retrospective scrutiny, the Act is rendered meaningless. Here, the government concedes that it did not follow FACA's requirements during the advisory committee process and the record clearly supports that concession. As the district court aptly pointed out:
 
 
 13
 A simple "excuse us" cannot be sufficient. It would make FACA meaningless, something Congress certainly did not intend.... The court sees no reason to retreat from its conclusion that FACA was designed by Congress to prevent the use of any advisory committee as part of the process of making important federal agency decisions unless that committee is properly constituted and produces its report in compliance with the procedural requirements of FACA, particularly where, as in this case, the procedural shortcomings are significant and the report potentially influential to the outcome.
 
 
 14
 Memorandum Opinion of December 23, 1993 (R2-61), 1993 WL 646410.
 
 
 15
 We agree with the district court that to allow the government to use the product of a tainted procedure would circumvent the very policy that serves as the foundation of the Act. Furthermore, "[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction." Califano v. Yamasaki, 442 U.S. 682, 705, 99 S.Ct. 2545, 2559, 61 L.Ed.2d 176 (1978). The broad equitable power necessarily encompasses the ability to fashion equitable relief in order to "adjust and reconcile public and private needs." United States v. Montgomery County Bd. of Ed., 395 U.S. 225, 227, 89 S.Ct. 1670, 1671, 23 L.Ed.2d 263 (1969). We find injunctive relief as the only vehicle that carries the sufficient remedial effect to ensure future compliance with FACA's clear requirements. Anything less would be tantamount to nothing.[9]
 
 III. CONCLUSION
 
 16
 Because we find that the district court had the discretion to grant injunctive relief and did not abuse that discretion, the order is AFFIRMED.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 5 U.S.C.App. 2
 
 
 [2]
 The Sturgeon is a fish that inhabits several rivers in Alabama and Mississippi
 
 
 [3]
 The Coalition is comprised of thirty-four businesses and organizations that operate in Alabama and Mississippi. A finding that the Alabama Sturgeon is an endangered species will purportedly have an adverse affect on thousands of jobs
 
 
 [4]
 The Appellees argue that the government chose to have the "panel" members file individual reports in an effort to fit a narrow exception that would take the advisory process outside FACA's requirements. The government denies any bad motive and we find it unnecessary to resolve this side issue
 
 
 [5]
 The district court found, and the FWS conceded (although characterizing any violation as inadvertent and de minimis ), that it had not fully complied with FACA's requirements. See Memorandum Opinion and Order of November 23, 1993 (R1-33)
 
 
 [6]
 During the litigation, Edward Wilkinson Mudd, Jr. intervened into the action in an effort to have the report released. Subsequently, he voluntarily dismissed his appeal and his brief was stricken upon the Coalition's motion. Accordingly, our discussion is limited to the remaining parties on appeal
 
 
 [7]
 We will only address the question with respect to the purported FACA violation and remedy granted thereunder because we find no merit in the Appellant's arguments involving the Endangered Species Act or the Administrative Procedure Act
 
 
 [8]
 We acknowledge that other Circuits have affirmed the denial of injunctive relief requested as a result of FACA violations. See, e.g., Public Citizen v. National Advisory Committee, 886 F.2d 419 (D.C.Cir.1989); National Nutritional Foods Ass'n. v. Califano, 603 F.2d 327 (2nd Cir.1979). However, neither Circuit held that injunctive relief was a categorically unavailable remedy for a FACA violation. Rather, the consideration of the possibility of injunctive relief suggests that those courts found no express or implied prohibition of this remedy. They merely found that on the individual facts of the cases before them, injunctive relief was inappropriate. We have different facts before us and, accordingly, reach a different result
 
 
 [9]
 It is simply insufficient for the government to contend that because the subject matter is serious, the environment is being threatened, and the objective is worthy, courts should not interfere or be concerned with minor transgressions. Quite the contrary. Because the matters are so serious and of such great concern to so many with differing interests, it is absolutely necessary that the procedures established by Congress be followed to the letter. This is not a situation where the entire procedure was delegated to the agency and it could promulgate its own rules. Congress outlined in detail exactly what procedures were to be used and it is the responsibility of the courts to see that such laws are carried out