PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
11/05/99
THOMAS  K. KAHN
CLERK

_____

No. 99-11177
_____

D. C. Docket No. 99-00253-CIV-T-24F


FLORIDA ASSOCIATION OF MEDICAL EQUIPMENT DEALERS,
MED-HEALTH CARE, et al.,

Plaintiffs-Appellants,

versus

KENNETH S. APFEL, Commissioner of
Health and Human Services,
NANCY-ANN MIN DEPARLE, Administrator, et al.,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____
**(November 5, 1999)**


Before CARNES and BARKETT, Circuit Judges, and PAINE*, Senior District Judge.
_____

* Honorable James C. Paine, Senior U.S. District Judge for the Southern District of
Florida, sitting by designation.

BARKETT, Circuit Judge:

Medi-Health Care Inc., and C&C Homecare, medical equipment suppliers doing business in Florida, as well as the Florida Association of Medical Equipment Dealers, an association of 300 medical equipment suppliers (collectively "FAMED"), appeal the district court's denial of their petition for a preliminary injunction against Kenneth Apfel, the commissioner of the Social Security Administration ("the government"). On appeal, FAMED argues that the trial court erred in dismissing this suit on the ground that FAMED had failed to establish Article III standing.

**Background**

In 1998, the Health Care Financing Administration (HCFA), the arm of the U.S. Department of Health & Human Services with authority and responsibility for administering Medicare, initiated a bidding process called a "competitive bidding demonstration project" in Polk County, Florida to contract for medical equipment, prosthetics, orthotics and other medical supplies pursuant to 42 U.S.C. § 1395w-3; see also 42 U.S.C. § 1395b-1(a)(1). Under the demonstration project, those who wished to sell such items to the government were required to compete by submitting bids. Suppliers whose bids failed to meet competitive price and quality standards were precluded from providing these items under Medicare. The bidding demonstration project had been developed with the assistance of Palmetto GBA (Palmetto) with whom HCFA had contracted for this purpose. To provide feedback regarding design

2

for the demonstration project and to serve as a liaison to interested members of the public, a National Technical Expert Panel (NTEP), composed of representatives of national organizations potentially interested in the Medicare bidding process, was convened. The NTEP met three times for this purpose and was not expected to, and did not, issue a report.

Rather than submitting bids, FAMED filed this lawsuit claiming that HCFA had failed to comply with the Federal Advisory Committee Act (FACA), 5 U.S.C. App. II, § 3, which provides that "advisory committee"[1] meetings must comply with requirements designed to ensure public access and participation. In its complaint, FAMED claimed that the NTEP was an "advisory committee" within the meaning of FACA whose advice was adopted in what is used today as the bidding demonstration project. FAMED charged that it did not have the opportunity to participate because it never received proper notice of the NTEP meetings which should have been published in the Federal Register 15 days in advance of the meeting. See 5 U.S.C. App. 2, § 10(a)(2); 41 C.F.R. Part 101-6.1015(b). FAMED also alleged that the NTEP failed to comply with other FACA provisions such as making available to the public

---

[1] FACA defines the term "advisory committee" to include "any committee, board, commission, council, conference, panel, task force, or other similar group . . . established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Goverment. . . ." 5 U.S.C. App. II, § 3.

any minutes, transcripts, and other documents from the meeting. See 5 U.S.C. App. 2, §§ 10(c), 10(d). FAMED argues that it would not have lost its opportunity to participate in the NTEP meetings and potentially to influence the structure of the demonstration project, which might have afforded FAMED a better chance to succeed in the bidding process had FACA's requirements been followed.

In its claim for relief, FAMED sought a preliminary injunction enjoining the HCFA from using or relying upon any advice, recommendations, or other materials generated by the work of the NTEP or discussed during NTEP meetings. Plaintiffs also sought to enjoin the bidding process "until HCFA complies with FACA's requirements." The government opposed FAMED's request for a preliminary injunction, arguing first that the plaintiffs lacked subject matter jurisdiction, and second that FAMED's complaint failed to state a claim upon which relief may be granted.

The district court denied the petition for a preliminary injunction on the basis that FAMED had failed to establish Article III standing because FAMED had not pointed to any injury traceable to the alleged FACA violation which could be redressed by the requested injunctive relief. FAMED appeals this determination. This Court reviews Article III standing, a question of law, *de novo*. Loggerhead Turtle v. County Council of Volusia County, Florida, 148 F.3d 1231, 1236 (11th Cir. 1998).

4

**Discussion**

In order to establish Article III standing, a plaintiff must demonstrate: (1) an injury-in-fact, (2) a causal connection between the injury and the conduct complained of, and (3) that the injury is likely to be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992); see also Erwin Chemerinsky, Federal Jurisdiction 56 (1999).

FAMED argues that it has suffered three different injuries traceable to HCFA's alleged violation of FACA: (1) it was unable to participate in the NTEP, and therefore to influence the configuration of the bidding project; (2) it would be disadvantaged in a "tainted" bidding project where some bidders had more influence over the structure of the demonstration project than others; and (3) the livelihood of FAMED's membership would be threatened if their bids proved unsuccessful.

In denying FAMED's motion for a preliminary injunction, the district court concluded that the only cognizable injury suffered by FAMED was its inability to participate in the NTEP, but because the NTEP was no longer in existence, such an injury could not be redressed by the issuance of an injunction. FAMED argues that the district court erred in concluding that the only cognizable injury was FAMED's inability to participate in the NTEP, and that this Court's decision in Alabama-Tombigbee Rivers Coalition v. Department of the Interior, 26 F.3d 1103 (11th Cir.

5

1994), expressly holds that a court may properly enjoin the government's use of a product created by a committee that failed to comply with FACA.

We agree with FAMED that under <u>Alabama-Tombigbee</u> a court may properly enjoin the government's use of a product created by a committee that failed to comply with FACA requirements. However, before we can address the underlying merits of FAMED's petition, we must first answer the threshold question of whether FAMED has Article III standing to seek an injunction. FAMED argues that although the court in <u>Alabama-Tombigbee</u> did not discuss standing, it controls the standing issue here, because the fact that the court resolved the claim on the merits implies that the plaintiffs there proved that they had Article III standing. We recognize that the Supreme Court has found that standing is a threshhold test that, if satisfied, permits a federal court to proceed to the question of whether a plaintiff has a cause of action. <u>Association of Data Processing Service Organizations v. Camp</u>, 397 U.S. 150, 152-3 (1970). Yet every court has an independent duty to review standing as a basis for jurisdiction at any time, for every case it adjudicates. <u>FW/PBS, Inc. v. Dallas</u>, 110 S. Ct. 596, 607-8 (1990).

We need not decide what, if any, precedential value a case has when the decision reaches the merits without any discussion of standing, because we find <u>Alabama-Tombigbee</u> inapplicable to the facts before us. Unlike the facts in <u>Alabama-</u>

6

Tombigbee, this case lacks the second requirement of standing, a causal connection between the alleged injury and the allegedly improper conduct. While demonstration of an injury is necessary to prove standing, it alone is not sufficient. A plaintiff also must allege and prove that the personal injury is "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984). These two requirements of causation – the allegation that the defendant's action caused an injury, and redressibility – the allegation that a favorable court decision would remedy the situation, must both be satisfied before a federal court may reach the merits of a case.

We initially agree with the district court that FAMED's allegations of harm or injury are much too attenuated to meet the requirements for standing. FAMED's argument seems to be that: *if* FAMED were to bid, FAMED *could* be forced to participate in a "tainted" bidding project, which *might* prove unsuccessful, and *potentially* threaten the livelihood of FAMED's membership *should their bids be rejected.* More importantly, however, the allegations lack a sufficient connection between the discussions at the three meetings of the NTEP, the effect of those discussions on Palmetto's efforts, the extent of Palmetto's contribution to the demonstration project, and the final design of the bidding project. Furthermore, it is unclear how this chain of events -- as opposed to myriad other possible causes –

7

would have contributed to the possible loss by FAMED's membership of any prospective bid, assuming one was submitted by all the plaintiffs in the first place.

This case differs greatly from Alabama-Tombigbee, in which the Fish and Wildlife Service had proposed a rule listing the Alabama Sturgeon as an endangered species *pursuant* to a report prepared by a scientific advisory panel assembled to directly advise the Service on this issue. In Alabama-Tombigbee, 34 businesses operating in Alabama and Mississippi sought to enjoin the use of the advisory panel's report as a basis for the finding that the Alabama Sturgeon was an endangered species. Plaintiffs alleged that such a designation would have an adverse effect on thousands of jobs because it would directly shut down related businesses.[2] Alabama-Tombigbee, 26 F.3d at 1105, n.3. In that case, the government conceded that the government was bound to follow FACA, that it had failed to do so, and that the ultimate decision of the agency to designate the sturgeon as endangered was based upon the scientific advisory panel's report.

---

[2] The Endangered Species Act prohibits actions likely to jeopardize the continued existence of certain species, thus providing "a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved . . . ." 16 U.S.C. § 1531(b) (1994). An endangered species is "any species [of plant or animal] . . . in danger of extinction throughout all or a significant portion of its range," as determined by the Secretary of the United States Department of Interior. Id. at § 1532(6).

Thus, although the court did not specifically address standing, the facts and the concessions of the government indicate that the plaintiffs in that case had alleged the requisite injury and causation to meet the threshhold requirement of Article III standing.  Unlike in <u>Alabama-Tombigbee,</u> where the agency ruling which would have directly precluded the plaintiffs from continuing in their businesses was specifically based on a report that was concededly developed in violation of FACA, FAMED's injuries are too speculative and the alleged connections much too tenuous to establish Article III standing here.[3]

For the foregoing reasons, the district court's order dismissing this case is **AFFIRMED.**

---

[3] Because FAMED has failed to show sufficient causation between the NTEP meetings and harm to FAMED in terms of the loss of a bid, we do not reach any questions of redressibility.