[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 4, 2002
THOMAS K. KAHN
CLERK

No. 01-16226

D.C. Docket No. 99-01315 CV-JAL

MICCOSUKEE TRIBE OF INDIANS OF FLORIDA,
a federally-recognized Indian tribe,

Plaintiff-Appellant,

versus

SOUTHERN EVERGLADES RESTORATION ALLIANCE,
LEWIS HORNUNG, in his official capacity
as executive director of the Southern
Everglades Restoration Alliance,
UNITED STATES OF AMERICA,
U. S. DEPARTMENT OF THE INTERIOR,
NATIONAL PARK SERVICE,
EVERGLADES NATIONAL PARK,
RICHARD G. RING, in his official capacity
as Superintendent of Everglades National Park,
UNITED STATES FISH & WILDLIFE SERVICE,
STEVEN FORSYTHE, in his official capacity
as State Supervisor of Department of the
Interior Fish and Wildlife Service,
THE UNITED STATES ARMY CORPS OF ENGINEERS,
JAMES G. MAY, Colonel, in his official
capacity as District Engineer for the
U.S. Army Corps of Engineers,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 4, 2002)**

Before CARNES and HILL, Circuit Judges, and DUPLANTIER[*], District Judge.

CARNES, Circuit Judge:

The Miccosukee Tribe is a federally recognized Indian Tribe whose members reside and work within the Florida Everglades. The Southern Everglades Restoration Alliance ("SERA") is a group organized and funded at least in part by certain federal agencies to assist themselves and other agencies in developing strategies for implementing restoration projects in the Everglades. The Tribe believes that the advice SERA has provided to federal agencies has caused continuing damage to tribal lands in the Everglades. As a result, the Tribe brought a lawsuit under the Federal Advisory Committee Act (FACA), 5 U.S.C. App.2 §§ 1 et. seq., seeking a declaratory judgment that SERA was an advisory committee within the meaning and coverage of the Act, that it was therefore subject to the requirements of the Act, and that SERA and its member agencies had failed to comply with those requirements, resulting in SERA's actions being void. SERA

_____

[*]Honorable Adrian G. Duplantier, U.S. District Judge for the Eastern District of Louisiana, sitting by designation.

is now defunct, but the Tribe also sought an injunction against the use of any of its advice and recommendations – what the Tribe calls SERA's "work product" – by any of the agencies named as defendants. The named defendants, in addition to SERA itself and its former executive director, Lewis Hornung, included a number of federal agencies and officials who allegedly had participated in SERA or had relied on advice given by SERA in implementing restoration projects in the Everglades.[1]

The district court, after finding that the Tribe had standing to bring the lawsuit, determined that although SERA did fall within the plain meaning of the statutory term "advisory committee," it was not within the intended scope of FACA. That determination led to the district court's conclusion that the Tribe had failed to state a claim upon which relief could be granted. We disagree with the district court's decision and reverse the judgment of dismissal as to virtually all of the defendants, affirming it only as to SERA itself and Hornung.

## I. BACKGROUND

---

[1] The federal agencies named as defendants are the United States Department of the Interior; the Everglades National Park; Richard Ring, in his official capacity as Superintendent of Everglades National Park; the United States Fish and Wildlife Service; Steven Forsythe, in his official capacity as State Supervisor of Department of the Interior Fish and Wildlife Service; the United States Army Corps of Engineers; and Colonel James G. May, Colonel, in his official capacity as District Engineer for the Corps of Engineers.

3

SERA ceased to exist sometime in 1999, but according to the complaint, in the 1990s SERA had been organized and funded by federal agencies to assist its members, both federal and state agencies,[2] in developing strategies for implementing restoration projects in the Florida Everglades.  The  SERA  members collaborated  to provide advice and recommendations for use in implementing various federal policies and programs dealing with the Everglades, including, for example, the Modified Water Deliveries Project, which was designed  to restore more natural hydropatterns in water conservation areas of the Everglades.

SERA failed to comply with some of the requirements of FACA, which governs the  procedures  certain committees established by the Executive branch must  follow.   For example, FACA requires notice of meetings of the committees or agencies it covers to be  published in the Federal Register, see 5 U.S.C. App. 2 § 10(a)(2), and none of SERA's meetings were.

The  defendants filed a motion to dismiss the complaint for failure to

---

[2] It is unclear from the complaint whether any private parties or agencies were members of SERA.   The federal agencies participating in SERA included the Corps of Engineers, the Fish and Wildlife Service, and the National Park Service, while the state agencies included the South Florida Water Management District and the Florida Department of Environmental Protection.  It appears from the complaint  that these agencies were directly responsible for implementing programs dealing with restoration of the Everglades.

4

state a claim, or in the alternative, for summary judgment, contending, among other things, that the Tribe lacked standing to bring the lawsuit; that SERA was not governed by FACA because it did not meet that Act's definition of "advisory committee" and did not fall within the Act's purposes; and that even if SERA would otherwise have been within the scope of FACA, it was taken out by virtue of the Unfunded Mandates Reform Act, 2 U.S.C. §§ 1501 et. seq. After staying discovery, the district court granted the motion to dismiss the complaint, concluding that SERA was not a committee governed by FACA because, although it did meet the "plain language" of FACA's statutory requirements as set forth in the definition of "advisory committee," it did not fall within the spirit of the statute as revealed by its legislative history. The Tribe appealed.

## II. DISCUSSION

### A. STANDING

A threshold issue in this case is whether the Tribe has standing to seek the relief it is seeking under FACA. The district court believed that the Tribe had alleged a sufficiently concrete and redressable injury to establish standing. Reviewing the issue de novo, Florida Ass'n of Med. Equip. Dealers v. Apfel, 194 F.3d 1227, 1229 (11th Cir. 1999), we agree.

5

In order to establish standing, a plaintiff must allege (and eventually prove): (1) an injury in fact, which means harm to the plaintiff that is concrete and actual or imminent; (2) causation; and (3) redressability, which means a likelihood that the requested relief will redress the injury. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 103, 118 S.Ct. 1003, 1016-17 (1998). The required showing, of course, depends to some extent on the stage of the litigation at which the standing issue is being decided, Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136 (1992), and here we are at the pleading stage. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Id. at 561, 112 S.Ct. at 2137 (internal quotations omitted).

The complaint alleges that SERA's involvement in developing a plan for Everglades restoration, which included recommending an alternative plan to the Modified Water Deliveries Project (a water management plan authorized by Congress to protect tribal lands), had delayed the implementation of that congressional plan for restoration of the Everglades and had thereby damaged tribal lands. The complaint also alleges that continued reliance on SERA's advice will result in decisions further delaying the implementation of the congressional

6

project, which will in turn continue to damage the land that the Tribe relies on for its subsistence. See id.

The defendants contend that the Tribe has failed to show it has standing because: (1) the alleged injury is too general; (2) the Tribe has not adequately alleged the failure of SERA to follow the FACA procedures caused the damage to tribal lands which the Tribe asserts as its injury; and (3) a use injunction would not redress the claimed injury, because the complaint does not allege how SERA's advice might be relied on in the future to cause harm, especially since SERA no longer exists. According to the defendants, in order to establish standing, the Tribe was required to plead specific facts describing the advice SERA had given that delayed implementation of the congressional plan, how that advice had influenced the final policy decision of the federal agency or agencies, and how the final decision had resulted in damage to tribal lands and would continue to damage them in the future.

If this case was at the summary judgment stage, and discovery had been conducted instead of stayed, we might agree with the defendants' arguments. See Lujan, 504 U.S. at 560, 112 S.Ct. at 2137 ("In response to a summary judgment motion... the plaintiff can no longer rest on ... 'mere allegations,' [acceptable at the pleading stage] but must 'set forth' by affidavit or other evidence 'specific

7

facts'...."). But that is not where this case is. It is only at the motion to dismiss stage, and at this stage the Tribe is only required to generally allege a redressable injury caused by the actions of SERA about which it complains. See Lujan, 504 U.S. at 561, 112 S.Ct. at 2137. It has done that. Without discovery, the Tribe is not expected to allege more particular information, such as the specific advice SERA gave which resulted in delaying implementation of the congressional project, especially since SERA allegedly did not make public its advice and recommendations. See Complaint ¶ 52.

Taken as true for purposes of the motion to dismiss, the Tribe's allegations of a past and *continuing* injury to its tribal lands allegedly caused by federal agencies' actual and continuing reliance on SERA's recommendations that were arrived at in violation of FACA establishes injury in fact and causation for present purposes. See Alabama-Tombigbee Rivers Coalition v. Dep't of the Interior, 26 F.3d 1103, 1107 (11th Cir. 1994) (a court may properly enjoin the government's use of a product created by a committee that failed to comply with FACA requirements). And the alleged injury could well be redressed by prohibiting the use of SERA's recommendations by the defendant federal agencies. See generally Byrd v. EPA, 174 F.3d 239, 244 (D.C. Cir. 1999) (rejecting argument that plaintiff's injury was not redressable because the panel that had allegedly operated

in violation of FACA had disbanded). In short, the Tribe in its complaint met the standard for establishing standing at the pleading stage.

## B. MOOTNESS

We agree with SERA and Hornung, however, that the Tribe's claim for relief against them is moot. Hornung is no longer the executive director of SERA, and SERA no longer exists. A declaratory judgment and use injunction against the nonexistent SERA and against Hornung, who no longer holds the now non-existent position of SERA's executive director, would afford the Tribe no meaningful relief. See Dow Jones & Co., Inc. v. Kaye, 256 F.3d 1251, 1254 (11th Cir. 2001). So, we will affirm the district court's judgment to the extent it dismisses the complaint insofar as SERA itself and Hornung are concerned. We turn now to the issues that are not moot, those that have to do with what is to happen to the lawsuit insofar as it concerns the other defendants, those federal agencies that continue to exist and officials in positions at those agencies that continue to exist.

## C. THE MERITS

9

Congress enacted FACA in 1972 to reform the use of advisory committees by the Executive Branch. Specifically, the Act aims to reduce the number of unnecessary committees and to increase the uniformity of procedures for the committees that are necessary. 5 U.S.C. App. 2 § 2(b). To achieve its goal, FACA places a number of requirements on advisory committees. An "advisory committee" is defined in the Act as "any committee, board, commission, council, conference, panel, task force, or other similar group" that is "established or utilized" by the President or an agency "in the interest of obtaining advice or recommendations" for one or more federal agencies or officers. 5 U.S.C. App. 2 § 3(2).[3] The requirements advisory committees have to meet include filing a detailed charter, giving advance notice in the Federal Register of any meetings, generally holding open meetings, having an officer or employee of the federal government preside over or attend every meeting, making records available to the public, and if the committee is established by legislation or created by the President or other federal official or agency, being "fairly balanced in terms of the points of view represented and the functions to be performed" and not being

---

[3]FACA does exempt from its definition of advisory committee "any committee ...composed wholly of full-time officers or employees of the Federal Government." 5 U.S.C. App. 2 § 3(2). Both sides agree that SERA does not fit within that exemption.

10

"inappropriately influenced by the appointing authority or by any special interest."

5 U.S.C. App. 2 §§ 5, 9, 10.

It is undisputed that SERA failed to operate in compliance with the requirements FACA imposed on advisory committees. The question is whether it was an advisory committee for FACA purposes. To answer that question, we look to the statute and the definition of "advisory committee" which Congress gave us to express its intent about the scope of that Act.

In FACA itself Congress said that it meant for the term "advisory committee" to include any (1) " committee, board, commission, council, conference, panel, task force, or other similar group," (2) "established or utilized" by the President or a federal agency[4] (3) "in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government." 5 U.S.C. App. 2 §3(2). It is clear that, at least insofar as the allegations of the complaint are concerned, SERA fit within the plain meaning of the statutory definition of an advisory committee. In the words of the complaint, SERA was an "entity with federal, state, and other member agencies that was organized in the mid 1990's by the federal defendants in the interest of obtaining

_____

[4]FACA's definition also covers otherwise qualifying entities that are established by statute or reorganization plan, 5 U.S.C. App. 2 § 3(2)(A), but that alternative is not involved in this case.

advice or recommendations and coordination regarding their respective activities," especially the implementation of four water projects relating to the Everglades, and the federal defendants obtained such advice and recommendations from it. Complaint ¶¶ 7, 9, 11, 13-16.

The D.C. Circuit has said that in order to be an advisory committee for purposes of FACA's definition, a "group" must have, "in large measure, an organized structure, a fixed membership, and a specific purpose" and must render advice or recommendations as a group, not as a collection of separate individuals. Ass'n of Am. Physicians and Surgeons, Inc. v. Clinton, 997 F.2d 898, 913-14 (D.C. Cir. 1993). We need not decide whether we agree with that view, because assuming those characteristics are essential, SERA is alleged to have had them.

The Supreme Court has said that to be a FACA advisory committee an entity must have been established by statute, the President or a federal agency in order to provide advice to the federal government. Public Citizen v. Dep't of Justice, 491 U.S. 440, 461, 109 S.Ct. 2558, 2570 (1989). The complaint alleges that SERA was formed or organized by federal agencies in order to give them advice and recommendations about the implementation of federal programs in the Everglades. It was allegedly funded by federal agencies and did not select its own agenda, but instead was organized to work on an agenda given to it involving

12

agency projects like the Modified Water Deliveries Project. That is enough to establish that it was "established" to provide advice or recommendations to government agencies.

The D.C. Circuit has taken the position that in order to qualify as a group established to provide "advice or recommendations," within the meaning of FACA, the entity also must have been created to provide advice or recommendations with regard to specific government policy and not merely to facilitate an exchange of ideas and information or simply to be an "operational" committee. See Sofamor Danek Group, Inc. v. Gaus, 61 F.3d 929, 934 & n.28 (D.C. Cir. 1995); Judicial Watch, Inc. v. Clinton, 76 F.3d 1232, 1233 (D.C. Cir. 1996); Ass'n of Am. Physicians, 997 F.2d at 914. Assuming that is correct, the complaint alleges SERA was created to "implement advice or recommendations, coordinate or integrate activities, create policies or law, or otherwise make decisions... " involving government policy relating to Everglades restoration, which is enough to satisfy the D.C. Circuit's test. Complaint ¶ 12.

The district court determined that even though the plain language of FACA covers SERA, that language is trumped by what the court perceived to be the core concern behind the enactment of FACA – protecting government decision making from the undue influence of *special interests*. Relying primarily on Public Citizen

13

v. Dep't of Justice, 491 U.S. 440, 109 S.Ct. 2558 (1989), the district court decided, in effect, that the plain language reach of FACA exceeds the intended grasp due to the overly broad statutory definition of "advisory committee." The district court essentially cured what it thought was Congress' drafting mistake by interpreting FACA to include only those groups or entities that present a danger of undue influence by special interests, which it implicitly defined to be only those whose membership includes at least one non-governmental entity representing private interests. The court concluded that the failure of the complaint to allege that the members of SERA were anything other than state and federal agencies or officials "responsible to the heads of their agencies, the President and the public," or that they "sought to influence governmental policy regarding restoration programs on the basis of parochial private interests" was fatal to the notion that SERA was an advisory committee.

That reasoning is replete with errors and the conclusion it reaches is wrong. To begin with, it is not even clear to us that the complaint fails to allege SERA included private groups. The complaint says in one place that SERA was composed of "federal, state, and *other* member agencies" and in another place refers to it as made up of "federal and non-federal participants and *consultants*." Complaint ¶ ¶ 7, 48 (emphasis added). At worst, this language is ambiguous

14

("other" and "consultants" could mean local government, or it could mean private groups or parties), and because the court was ruling on a motion to dismiss, the complaint should be construed in the light most favorable to the Tribe – it should have been interpreted to include allegations of private party involvement in SERA. That error really is not essential to our conclusion, however, because putting aside that case-specific factual concern, there are legal flaws in the court's reasoning.

The district court relied primarily on the Supreme Court's decision in Public Citizen, but that case involved a different issue entirely, and much of the reasoning contained in the Public Citizen opinion actually runs counter to the district court's conclusion. For one thing, Public Citizen does not establish, as the district court thought, that the sole or principal purpose of FACA was to protect government decision making from the influence of special interests. To the contrary, what the Supreme Court said was that "FACA's principal purpose was to enhance the public accountability of advisory committees established by the Executive Branch and to reduce wasteful expenditures on them." Public Citizen, 491 U.S. at 459, 109 S.Ct. at 2569. Moreover, the bottom line result of the Public Citizen decision actually runs against what the district court insisted was the principal purpose of FACA, because in that decision the Supreme Court concluded that privately organized interest groups whose advice and recommendations governmental officials and

agencies seek and are influenced by are not covered by FACA. That result cannot be reconciled with the theory that the overriding purpose of FACA is to expose and restrict special interest group influence.

Nor does the holding of Public Citizen otherwise support the position that FACA did not cover SERA. FACA's definition of advisory committee speaks in terms of entities or groups that are either "established or utilized by one or more agencies" for the purpose of obtaining advice or recommendations for the President or other federal officials or agencies. 5 U.S.C. App. 2 § 3(2). Public Citizen was not a case dealing with the meaning of the "established" alternative but instead dealt exclusively with the "utilized" alternative. The Supreme Court concluded that FACA did not apply to the Justice Department's solicitation of the American Bar Association Standing Committee on the Federal Judiciary's views on prospective judicial nominees, because that private committee was not "utilized" within the meaning of the statutory definition of an advisory committee by the President or by the Department of Justice in connection with their evaluations of the judicial nominees. Public Citizen, 491 U.S. at 452-465, 109 S.Ct. at 2565-2572. Because the ABA committee involved in Public Citizen was not established by federal agencies, that decision did not and could not have held anything about the meaning or effect of the "established ... by one or more

16

agencies" language in the statute.  That means it could not and did not hold

anything about the only language at issue in this case.

Of course, even when the direct, narrow holding of a judicial decision does

not fit the case at hand, we may obtain guidance by borrowing the decision's

reasoning, extrapolating from its result, and using it as an analogy.  The guidance

that can be obtained from Public Citizen points toward the conclusion that the

word "established" in the statutory  phrase "established or utilized" should be

given its plain meaning.  In refusing to give the word "utilized" its plain meaning,

which would have meant that privately organized committees like the ABA one

involved in Public Citizen were covered, the Supreme Court emphasized that,

"FACA's principal purpose was to enhance the public accountability of advisory

committees established by the Executive Branch and to reduce wasteful

expenditures on them," which "could be accomplished ...without ... includ[ing]

privately organized committees."  491 U.S. at 459, 109 S.Ct. at 2569.  That

principal purpose  cannot  be accomplished, however, without including

committees such as SERA which were organized by federal agencies.

There is even more specific guidance than that in Public Citizen about how

"established ... by one or more agencies" should be read.  The Supreme Court

actually contrasted the more narrow and non-literal meaning that was to be given

17

to the word "utilized" with the broader and literal meaning that should be given to the word "established." It examined legislative history and reached the conclusion that when the legislation reached the Conference Committee, the House bill's initial "focus on advisory committees established by the Federal Government, in an expanded sense of the word 'established,' was retained." Id. at 462, 109 S.Ct. at 2571. The Court explained that the phrase "or utilized" was added in conference "simply to clarify that FACA applies to advisory committees established by the Federal Government in a generous sense of that term, encompassing groups formed indirectly ... 'for' public agencies as well as 'by' such agencies themselves." Id. The phrase applies, the Court said, not to privately organized groups, but to "advisory groups 'established,' on a broad understanding of that word, by the Federal Government." Id. at 463, 109 S.Ct. at 2571. The ABA committee involved in Public Citizen was not established in any sense of the word by the federal government and its agencies, but SERA was, in every sense of the word.

There is nothing in the reasoning of the Public Citizen opinion to support the conclusion that advisory committees established by federal agencies are not covered by FACA unless they have private individual or group members the inclusion of which threatens to infect the proceedings of government with the influence of external special interests. To construe the statutory word

18

"established" in that restrictive, artificial way runs counter to the teachings of the Public Citizen that "established" was used "in an expanded sense of the word," and "in a generous sense," and the word should be applied with a "broad understanding" in order to encompass all such committees formed directly or indirectly by the federal government or its agencies. Id. at 462-63, 109 S.Ct. at 2571.

Not only that, but the Supreme Court explained its restrictive reading of "utilized" was motivated by a desire to avoid the serious constitutional question that would have been presented if that term had been read to include all privately organized groups. See id. at 465-67, 109 S.Ct. at 2572-73. The constitutional question that would have reared its head if the word "utilized" had been read according to the plain and ordinary meaning of that term was so serious that the district court and five members of the Supreme Court concluded that reading "utilized" to mean utilized rendered that aspect of FACA unconstitutional. See id. at 448, 466-67, 109 S.Ct. at 2563-64, 2573. The majority avoided that specter by construing the term "utilized" in a way contrary to its plain meaning. In contrast, there is no need to run from the plain meaning of "established" in order to escape a serious constitutional question, because there is no serious constitutional question

19

raised by application of FACA's requirements to every advisory committee established by the federal government.

The <u>Public Citizen</u> decision does not give lower courts license not to apply the plain meaning doctrine of statutory interpretation. There is, to be sure, language in the opinion that might give that impression, <u>see</u> <u>id.</u> at 453-55, 109 S.Ct. at 2566-67, but it must be read in context and in light of the 13 years of Supreme Court decisions that have come since. One part of the context is that, as we have just discussed, giving the word "utilized" its plain meaning probably would have rendered that aspect of the statute unconstitutional. Another part of the context is that giving the word "utilized" its plain meaning would have led to what the Supreme Court believed was an absurd result. It would have meant, the Court pointed out, that all privately organized groups which gave advice or made recommendations to the President or any federal agency were covered, which in turn would have meant the restrictions of FACA applied to "every formal and informal consultation between the President ... and a group rendering advice," including, for example, the NAACP whose views he was seeking on nominations to the EEOC, or leaders of the American Legion whose views he was soliciting about some aspect of military policy, or his own political party whose views he was receiving about selections to his Cabinet. <u>Id</u>. at 452-53, 109 S.Ct. at 2566.

The Court could not believe Congress intended the result that giving a plain meaning interpretation to the word "utilized" would have brought about and viewed the  plain meaning of the word as calling for an odd result that could be labeled  absurd.  Id. at 454-55 & n.9, 109 S.Ct. at 2567 &n.9.  There is, of  course, a well-established absurdity exception to the plain meaning doctrine. See, e.g., Rowland v. California Men's Colony, 506 U.S. 194, 200 & n.3, 113 S.Ct. 716, 720 & n.3 (1993)("the common mandate of statutory construction to avoid absurd results"); United States v. Brown, 333 U.S. 18, 26, 68 S.Ct. 376, 380 (1948);  CBS Inc. v. Primetime 24 Joint Venture, 245 F.3d 1217, 1228 (11th Cir. 2001)("[C]ourts may reach results inconsistent with the plain meaning of a statute if giving the words of a statute their plain and ordinary meaning produces a result that is not just unwise but is clearly absurd.")(internal marks and citation omitted); Merritt v. Dillard Paper Company, 120 F.3d 1181, 1188 (11th Cir. 1997)("statutory language should not be applied literally if doing so would produce an absurd result").  Public Citizen actually did nothing more than apply the absurd results exception to the plain meaning rule.  True, the opinion expressly disavowed the idea that it was only applying the absurd results exception, Public Citizen, 491 U.S. at 453  n.9, 109 S.Ct. at 2566 n.9,  but it proceeded to apply that exception nonetheless and reached exactly the result the exception dictated.   Here, that

21

exception does not apply, because there is nothing absurd, or even questionable, about applying FACA's requirements to all advisory groups established by federal agencies. It makes sense to do so in light of the statute's stated purposes.

Any idea that Public Citizen went beyond the absurdity exception and marked a permanent retreat from the plain meaning rule is dispelled by decisions of the Supreme Court since Public Citizen in which the Court has reinstated plain meaning to a position of primacy in the pantheon of statutory construction canons. Just three years after that decision, the Supreme Court emphatically stated that "in interpreting a statute a court should always turn first to one, cardinal canon before all others," and defined that rule as being "that courts must presume that a legislature says in a statute what it means and means in a statute what it says there," so that "[w]hen the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 1149 (1992) (internal quotations and citation omitted). And earlier this year, the Court reminded us that the inquiry into legislative intent ceases "if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" Barnhart v. Sigmon Coal Co., 122 S.Ct. 941, 950 (2002).

In between the <u>Germain</u> decision and the <u>Barnhart</u> decision there have also been a host of other decisions which leave no doubt that, any intimation in <u>Public Citizen</u> to the contrary notwithstanding, unambiguous language in a statute is more than mere evidence of what Congress intended the law to be – it is the law. <u>See, e.g.</u>, <u>United States v. LaBonte</u>, 520 U.S. 751, 757, 117 S.Ct. 1673, 1677 (1997) ("[W]e assume that in drafting this legislation, Congress said what it meant."); <u>United States v. Gonzales</u>, 520 U.S. 1, 6, 117 S.Ct. 1032, 1035 (1997) ("Given [a] straightforward statutory command, there is no reason to resort to legislative history."); <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 340, 117 S.Ct. 843, 846 (1997) ("Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.") (internal quotations and citation omitted); <u>Ratzlaf v. United States</u>, 510 U.S. 135, 147-48, 114 S.Ct. 655, 662 (1994) (even where "[t]here are...contrary indications in the statute's legislative history ... we do not resort to legislative history to cloud a statutory text that is clear."). Our circuit's decisions have recognized and followed the plain meaning rule in all its rigors. <u>See, e.g.</u>, <u>Harris v. Garner</u>, 216 F.3d 970, 972 (11th Cir. 2000)(en banc); <u>United States v. Steele</u>, 147 F.3d 1316, 1318 (11th Cir. 1998)(en banc); <u>United States v. Maung</u>, 267 F.3d 1113, 1121 (11th Cir. 2001); <u>CBS Inc. v. Primetime 24 Joint Venture</u>, 245 F.3d at 1222-24.

The plain meaning rule still rules statutory construction, and it compels our conclusion in this case:  SERA is an advisory committee within the meaning of FACA, because it was  "established ... by one or more agencies, in the interest of obtaining advice or recommendations."  The district court should not have dismissed the complaint on the theory that FACA did not apply to SERA as it is described in the allegations of the complaint.[5]

## III.  CONCLUSION

---

[5]The defendants also contend that SERA is taken out of the scope of FACA's coverage by the Unfunded Mandates Reform Act, 2 U.S.C. §§ 1501 et. seq., which was enacted by Congress in 1995  to curb the imposition of unfunded federal mandates on state and local governments. That Act explicitly excludes from FACA's coverage  meetings  between  federal officials and elected  state, local, and tribal officials (acting in their official capacities) if those meetings are  held solely  for the purpose  of  "exchanging views, information, or advice relating to the management or implementation of Federal programs established pursuant to public law that explicitly or inherently share intergovernmental  responsibilities  or administration."  2 U.S.C. § 1534(b). The district court did not decide this issue and neither do we, preferring to leave it to the district court in the first instance. Of course, if the district court considers materials  beyond the allegations of the complaint in deciding this issue, it will need to comply with the last sentence of Rule 12(b).

For the foregoing reasons, we disagree with the district court that the complaint failed to state a claim upon which relief could be granted.   Therefore, we REVERSE  and REMAND for proceedings consistent with this opinion, except that we AFFIRM the dismissal as to defendants SERA and Hornung.