[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-12188
Non-Argument Calendar

_____

D.C. Docket No. 6:14-cv-01485-GAP-GJK


ARELIS NUNEZ,

                                                        Plaintiff-Appellant,

versus


J.P. MORGAN CHASE BANK, N.A.,
a Delaware Corporation,
MANUFACTURERS AND TRADERS TRUST COMPANY,
a New York Corporation,
d.b.a. M and T Bank,
BAYVIEW LOAN SERVICING LLC,
a Delaware Limited Liability Company,

                                                        Defendants-Appellees.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 22, 2016)

Before MARTIN, JORDAN, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Arelis Nunez appeals the district court's grant of motions to dismiss her amended complaint for failure to state a claim. She alleged that J.P. Morgan Chase Bank, N.A. ("Chase"), Manufacturers and Traders Trust Company ("M and T"), and Bayview Loan Servicing LLC ("Bayview") violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et. seq. (RESPA), and that Chase committed negligence per se, by mishandling her home mortgage after she temporarily fell into delinquency. Nunez sent two RESPA "notices of error" to Chase and one to Bayview alleging various mortgage account errors. First, she says Chase wrongly allowed her home to be foreclosed on despite having signed a loan-modification agreement with her. Second, she says Chase acted inconsistently with the loan-modification agreement before transferring the mortgage to M and T, which she also believes violated the agreement. The district court ignored Nunez's second set of allegations and did not construe the facts favorably to her. After careful consideration, we reverse and remand.

## I.

"We review de novo the district court's grant of a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable

2

to the plaintiff." Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1359 (11th Cir. 2011) (quotation omitted). Even when assertions in a complaint are arguably ambiguous, they should be construed in the light most favorable to the plaintiff. Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance, 304 F.3d 1076, 1083–84 (11th Cir. 2002). To survive a motion to dismiss, a complaint need only contain sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). It must "raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965.

RESPA—as implemented by Regulation X, 12 C.F.R. § 1024 (2015)—allows borrowers to notify mortgage servicers of possible account errors. See 12 C.F.R. § 1024.35. Once properly notified, a servicer must respond in one of two ways:

> (A) Correct[] the error or errors identified by the borrower and provid[e] the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> (B) Conduct[] a reasonable investigation and provid[e] the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

Id. § 1024.35(e)(1)(i).  Account errors are broadly defined by § 1024.35(b), which includes a residual category for "[a]ny other error relating to the servicing of a borrower's mortgage loan."  Id. § 1024.35(b)(11).

## II.

Nunez fell behind on her home mortgage—originally serviced by Chase—in 2010.  Chase initiated foreclosure proceedings and received judgment in its favor in October 2012.  However, before the foreclosure sale took place, Nunez and Chase entered into a loan-modification agreement in January 2013,[1] which allowed her to avoid foreclosure by making reduced monthly payments.  Or so she thought.

Despite the loan-modification agreement, Chase failed to timely notify the state court that the foreclosure sale should be cancelled or continued.  Chase had originally requested that the state court postpone the foreclosure sale, which was rescheduled for March 20, 2013.  But Chase waited too late to request further postponement—its foreclosure attorneys asked on the eve of the sale, despite a requirement that such requests be heard at least ten days beforehand.[2]  The foreclosure sale proceeded and Nunez's property was sold on March 20, 2013.  She claimed that she suffered eviction attempts as a result.

---

[1] Chase disputes when this agreement began, claiming it did not take full effect until May 2013 because the initial period was merely a "trial."  As the district court noted, this period was only a "trial" insofar as final approval depended on Nunez making the reduced payments (which she did)—Chase did not retain total discretion over whether to grant a permanent loan modification.

[2] The exact number of days before the sale that Chase sent the request is not clear, but it appears to have been between one and five.

Notwithstanding the foreclosure sale, Nunez submitted all her "trial" payments and was approved for a permanent loan modification in May 2013. Around the same time, Chase sought to rescind the foreclosure sale. When this failed, Chase cancelled the loan-modification agreement with Nunez and stopped applying her payments to the loan (though it retained them in a "suspense account"). In February 2014, Chase began again with the rescission process. The next month, Nunez sent a RESPA notice of error letter to Chase, informing it of the wrongful foreclosure on her home and requesting that it investigate and remedy the error by "implement[ing] the terms of the loan modification agreement."

Chase promptly responded. Despite documenting this chain of events, Chase maintained that "there has not been an error with [Nunez's] loan." It averred that the loan-modification agreement had been "canceled," but said that "[i]f the [rescission] is approved, we can then review [Nunez's] mortgage for a modification." The foreclosure sale was ultimately rescinded on May 15, 2014.

In late May and early June of 2014, Chase reopened negotiations for a loan-modification agreement with Nunez. Chase said it could renew the old loan-modification agreement if Nunez paid $3,450.09 toward her account. Chase acknowledges that she did so on July 3, 2014.

Nevertheless, Nunez continued to receive letters from Chase titled "**Acceleration Warning (Notice of Intent to Foreclose)**." Inconsistent with the

5

loan-modification agreement, these letters claimed that Nunez was in default, listed substantial (and conflicting) payments that were supposedly past due, and threatened another foreclosure.  Nunez claimed that the three such letters she attached to her amended complaint were simply "examples [and] are not intended to be exhaustive."

The renewed loan-modification agreement was completed in late August 2014.  Significantly, Nunez did not concede that the loan-modification was ever successfully <u>implemented</u>—quite the contrary.  <u>See</u> <u>infra</u> pp. 9–10.  Nunez filed this lawsuit against Chase on September 10, 2014.  She also sent a second RESPA notice of error letter to Chase, documenting its "continued failure to honor [her] loan modification agreement."  Once again, Chase responded by denying any error.

On September 16, 2014, Nunez's loan was transferred to M and T.[3]  Chase alleged that this transfer occurred "with the modified loan terms and monthly payment in place."  On the other hand, Nunez alleged that the servicing errors regarding the loan-modification agreement were "ongoing."  For support, she attached to her amended complaint: (1) a September 30th letter from M and T stating that "you are presently in default" and threatening another foreclosure, and (2) an October 2nd letter from Bayview stating that "[y]our account may have been referred to an attorney for legal action, and additional fees and charges may be

---

[3] Bayview allegedly partnered with M and T to service loans, including Nunez's.

6

accruing." Nunez sent a third RESPA notice of error letter, this time to Bayview, on October 8, 2014. She documented the past problems with her account and requested that Bayview "confirm that the loan modification has been completely boarded and that your company will not take further collection activity." Neither Bayview nor M and T ever responded.

In her amended complaint, Nunez claimed that (1) Chase had violated RESPA by failing to reasonably investigate and respond to her two notices of error; (2) Chase had thereby committed negligence per se; and (3) Bayview and M and T had violated RESPA by failing to respond to her third notice of error. The defendants both moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim, and Nunez responded. The district court granted both motions and denied Nunez's request for reconsideration. Nunez timely appealed.

## III.

The district court erred by granting the defendants' motions to dismiss. The court did not properly construe the facts alleged by Nunez in accord with the standard applied on a Rule 12(b)(6) motion. Specifically, the district court construed Chase's "[q]uizzical[]" responses to Nunez's notices of error as evidence of a reasonable investigation that "fix[ed] the problem," all while relying on unsupported inferences about Chase's intentions and versions of the facts that contradict the allegations in Nunez's amended complaint.

7

In concluding that Chase's responses complied with "the letter and spirit of [RESPA]," the district court impermissibly drew inferences in Chase's favor. Despite acknowledging that Chase's finding of no error was "odd conclusion" and "stands in contrast to the history traced out in the loan," the court took it upon itself to offer a "fairer assessment" of Chase's real intentions. The "[q]uizzical[]" responses, the court speculated, were actually a ruse designed to "comply with [RESPA's] binary response options." That is, Chase "chose" to repeatedly state that no error had occurred—despite secretly "conclud[ing] that there was a problem"—because RESPA "does not contemplate errors of the type that cannot be fixed within the thirty day response deadline." According to the district court, Chase's unreasonable assessments of the situation were just an adept workaround. This analysis simply failed to give proper deference to what Nunez said in her pleadings.

Beyond that, the district court ignored another set of Nunez's allegations and again construed facts favorably to the defendants. Throughout this case, Nunez has clearly alleged that Chase failed to properly implement and honor the loan-modification agreement, and she has attached documents that support this claim. See, e.g., Doc. 1 at 6 ("[A]s the documents attached hereto as Exhibit 'D' reflect, Chase continues to fail to honor the loan modification agreement, and is once again pursuing foreclosure and collection activity."); Doc. 24 at 7 ("[A]s the documents

8

attached hereto as Exhibit 'D' and 'F' reflect, Chase continued to fail to honor the[] loan modification agreement, and continued to pursue foreclosure and collection activity for the entire time that it serviced Plaintiff's loan."); Id. at 10 ("[Chase] fail[ed] to properly handle and implement [Plaintiff's] approved loan modification."). In deciding Rule 12(b)(6) motions to dismiss, the district court was required to accept these allegations as true and construe all facts in the light most favorable to Nunez. Ironworkers Local Union 68, 634 F.3d at 1359. Instead, the court ignored these allegations and concluded that Chase "[did] the best it could," "fix[ed] the problem," and "put [Nunez] in her desired modified repayment program." These conclusions were not proper in deciding Rule 12(b)(6) motions.

Viewed in the light most favorable to her, Nunez has alleged that her home was wrongly foreclosed on despite a valid loan-modification agreement, simply because Chase failed to timely request postponement of the foreclosure. Chase later purported to cancel its loan-modification agreement with her because it could not rescind the wrongful foreclosure. Even though it eventually did rescind the foreclosure and accept payment from Nunez to renew the loan-modification agreement, Chase continued to shower Nunez with letters claiming she was in default and threatening another foreclosure. When she repeatedly notified Chase that these errors had occurred, Chase flatly denied any error. Nunez's allegations—each supported by attachments—are not reflected in the district

9

court's conclusions. Her claim that Chase failed to conduct a reasonable investigation into or correct its errors as required by RESPA rises above the level of speculation. See Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.

Attempting to justify the improper standard applied by the district court, the defendants argue that the court merely favored facts from Nunez's attachments over her "conclusory and unwarranted accusations." However, the "facts" that the defendants allude to are taken from Chase's own letters. For example, in response to Nunez's claim that Chase failed to properly implement the loan-modification agreement, the defendants point to: (1) Chase's second letter denying any error, and (2) Chase's letter enclosing the renewed loan-modification agreement.[4] These documents do not contain "specific factual details" that "foreclose recovery as a matter of law." Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007) (quotation omitted). They are legal documents, drafted by one of the movants, which contain disputed accounts of the facts. Elevating claims in Chase's own letters over the plaintiff's allegations in the amended complaint and in other attachments would turn the standard for considering a Rule 12(b)(6) motion on its head.

---

[4] To the extent the second letter is cited to show that the loan-modification agreement was executed by Chase in August 2014, it is not even relevant. Nunez does not dispute this fact. She contends that Chase did not properly implement or honor the loan-modification agreement, not that it didn't exist.

10

The district court's dismissals of Nunez's RESPA claim against Bayview and M and T, as well as Nunez's negligence per se claim against Chase, were premised on the reasoning we rejected above.  For the RESPA claim against Bayview and M and T, the district court concluded that dismissal was proper because Chase had already adequately responded to Nunez's concerns.  For the negligence per se claim against Chase, the district court concluded that dismissal was warranted because RESPA had not been violated.  These conclusions cannot stand at this stage of the proceedings.  After careful consideration of the record before us and the parties' briefs, we REVERSE and REMAND.

**REVERSED and REMANDED**